## The State of Maryland *vs.* James Glascow.

*Irregularity in selecting a Grand Jury, and its effect upon an Indictment found by it—Construction of the Act of 1870, ch. 220.*

In the selection of a grand and petit jury for Baltimore County, under the provisions of the Act of 1870, ch. 220, one of the forty-eight names drawn for the general panel was that of a non-resident of the county. This name was not, however, among those which were drawn as grand jurors. HELD:

1st. That whatever weight the non-residence of the party might have had in determining his own qualification as a petit juror, it had no substantial bearing upon the qualifications or fitness of those actually constituting the grand jury.

.2nd. That the statute was to be regarded mainly as directory in its multifarious provisions; and unless any irregularities incident to carrying out its directions in good faith, should be shown to materially violate it, or so affect the juries as to prejudice the rights of the citizen, these irregularities should not be treated as fatal.

:3rd. That the irregularity in this instance was no ground for a plea in abatement to an indictment found by said grand jury.

APPEAL as by Writ of Error from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court.

The cause was submitted to MILLER, STONE, ALVEY, ROBINSON, IRVING, and RITCHIE, J.

*Charles J. M. Gwinn, Attorney-General,* for the appellant.

No counsel appeared for the appellee.

RITCHIE, J., delivered the opinion of the Court.

An indictment for barn-burning was found against the defendant in error, in the Circuit Court for Baltimore County, at the December Term, 1881, to which the prisoner pleaded, in abatement, such alleged non-compliance with those provisions of the Act of 1870, chap. 220, which prescribe the mode of drawing the jury in that county, as rendered the grand jury illegal, and the indictment, consequently void. That statute, as to Baltimore County, directs that the two hundred names of qualified citizens from which the forty-eight are to be taken who shall constitute the grand and petit juries, instead of being deposited by the Judges in one common box, as in most of the counties of the State, shall be placed in thirteen separate compartments which bear the numbers of the election districts where the persons so selected respectively reside, and from each of these compartments shall then be drawn a certain specified number making in the aggregate forty-eight names, for the general panel for both juries; the number to be so taken from compartment No. 8, being five. The matter specially relied on in the pleas is, that among the names placed in box No. 8, and among the five drawn therefrom, was the name of one Edward Toolan, who was at the time his name was so placed in said box, and drawn therefrom, and for a great length of time had been, a resident of the City of Baltimore; that by reason of this error but four, instead of five, qualified members of the general panel of forty-eight were taken from the compartment representing the eighth election district; and that in consequence the grand jury, afterwards drawn from the list of forty-eight names, which included that of Edward Toolan, was not constituted according to law, and its indictment of the traverser, therefore, irregular and of no effect.

To the pleas in abatement a demurrer was filed, which was overruled, and judgment was entered quashing the

indictment. The case was thereupon removed as by writ of error to the Court of Appeals.

The Attorney-General, who represents the State in this Court, contends not only that there was error in the Circuit Court, as to the substantial question involved, but also that the pleas in abatement are vicious from technical uncertainty.

In view, however, of the conclusion arrived at by this Court upon the substance of the matter in controversy, we deem it unnecessary to consider the latter objection.

It appears from the agreement of counsel in the record, that Edward Toolan was not drawn upon the grand jury, but was left on the panel for the petit jurors, and was, after serving thereon, discharged before the end of the term. .

The simple question, therefore, for us to decide, is, whether the fact of Edward Toolan's being a resident of Baltimore City, when his name was taken from box No. 8, although it was not among the twenty-three subsequently drawn upon the grand jury, so vitiated the entire drawing as to invalidate that body and annul its action.

The answer to this question is to be found, we think, in the answer to the further one, whether, conceding there was irregularity, the circumstance relied on by the traverser so affected the composition or conduct of the grand jury as to practically operate to his prejudice or disadvantage. He does not so allege, nor can we perceive that it did. Whatever weight the non-residence of Toolan might have had in determining his own qualifications as a petit juror, it certainly had no substantial bearing upon the qualifications or fitness of those actually constituting the grand jury. They, at least, were "good and lawful" men, possessing all the essential requisites for membership in that body, and free from any statutory disability in themselves. There was nothing in the fact of Toolan's non-residence to impair their fitness to discharge with skill and impartiality the duty of investigating the charge against

the accused or to prevent a finding in accordance with the law and the evidence. The prisoner was in no sense damnified, and he could not show, as he has not undertaken to show, that but for the fact of Toolan's non-residence, the deliberations of the jury would have been more intelligent or impartial, or that a different conclusion would have been reasonably possible, had an actual resident of the eighth district been drawn from the box instead of Toolan.

The fact that one of the two hundred names placed in the boxes and drawn therefrom was ineligible, is too remote and impractical a consideration to warrant so serious a consequence as the discharge of a grand jury and the defeat of its action, when the ineligible party is not a member of that body. Nor do we think the statute contemplates such a result. The selection of so large a number as two hundred names is to provide against bias or other improper influence in securing the juries to be taken therefrom ; and if every irregularity or mistake in the selection of so great a number of names, with the liability to error incident to their very number and the elaborate process of the drawing, though the mistake may be such as operates no injury in the composition of the juries, is to be availed of to invalidate those bodies ; the present jury law, so beneficial in design, will be turned into a fruitful resource for violators of the law.

The statute is to be regarded mainly as directory in its multifarious provisions ; and unless any irregularities incident to carrying out its directions in good faith shall be shown to materially violate it, or so affect the juries as to prejudice the rights of the citizen, these irregularities should not be treated as fatal.

The sound rule on this subject is thus expressed in the text of *Proffat on Jury Trial*, sec. 46 :

"The principle on which a Court acts when objections are made to the selection and summoning of grand jurors is well stated in *United States vs. Reed*, where it is held

that although there may be technical objections to the proceedings in point of strict regularity, yet unless they have prejudiced the accused, the Court will not set them aside." The case referred to is in 2 *Blatch.*, 435. On pages 449 and 450 of the same case, Justice NELSON further says, the Court "will look into the facts presented, on which a charge is made against the regularity of the proceedings in the selection and summoning of grand jurors in a given case, and will hear the explanations on the other side, and its judgment will be determined accordingly. If it sees there has been improper conduct in the public officers, which has resulted prejudicially to the party accused, it is bound to set aside all the proceedings. On the contrary, although there may be technical objections to the proceedings in point of strict regularity, yet unless the Court is satisfied that they have resulted, or may result, to the prejudice of the party accused, it will not set them aside, because the interposition in the case will not be required on the ground of justice either to the accused or to the public."

In the case of *Cole vs. Perry*, 6 *Cowen*, 584, on a motion to set aside a verdict because ballots containing the names from which the petit jury was drawn, were not so folded as to prevent the name being seen, as was required by the statute, the Court says: "The statute relied upon is merely *directory* to the officers drawing the ballots. We have often holden this in relation to statutes of a similar character. *No abuse or injury to the defendant* being pretended, and no objection made at the time, the mistake of the officer is not a ground for setting aside the proceedings."

And so in *Ferris vs. The People*, 35 *N. Y.*, 129, the Judge held:

"It must be conceded that the most culpable irregularities existed in reference to the drawing of the additional panel of jurors ordered by the Court. The officers whose duty it was to attend such drawing were clearly guilty of

a gross neglect of duty, and doubtless are liable to punishment therefor. The question still arises, whether any injury has resulted to the prisoner or he has been prejudiced thereby."

See also *Gardiner vs. The People*, 6 *Parker's Cr.*, 155, which accords with the prevailing current of decisions, which is to the effect, that, whether jurors are summoned in the common mode, by the sheriff, or are selected and drawn in the manner provided by our present statute, irregularities in drawing the juries will not affect the constitution of those bodies unless it can be seen that detriment will result therefrom.

It follows from the views we have expressed, that the judgment of the Circuit Court must be reversed, and the cause remanded in order that the defendant in error may be tried upon the indictment against him.

> *Judgment reversed, and*
> *cause remanded.*