(Decided February 24th, 1897).

---

## STATE OF MARYLAND *vs.* B. PALMER KEATING.

*Grand Jury—Selection and Drawing—Adoption by One Judge of List of Names Made by Another Judge of the Same Court—Time of Selecting the Names—Irregularities in Drawing.*

In making up the list of names from which a grand jury is to be drawn one Judge of a Circuit Court is authorized to confer with and accept suggestions from another Judge of the same Court, and he may also make use of the names upon a list prepared either by himself or another Judge of the same circuit for a previous drawing but not drawn out.

The list of names from which a grand jury is to be selected may be made out by the Judge before the time of actually drawing the jury

because he does not technically select the names until the jury is drawn in open Court, at which time objections may be made. The Judge must see that the names selected are either on the tax lists or poll-books, but he is not required to do this at the drawing.

The ballots containing the names to be placed in the box may be prepared before the time of drawing, provided they are folded by the Judge, or in his presence, and placed in the box by him.

Code, Art. 51, secs. 7 and 8, provides that the Judges of the Circuit Courts, after notice, &c., and in the presence of the members of the bar, &c., shall select from the list of taxable inhabitants or from the poll-books a panel consisting of 150 names, and shall cause the names selected to be written upon ballots and folded, and these shall be placed by the Judges in the box, &c. The Judge of one of the circuits, before selecting the grand jury for the May term, 1896, received a list of the male taxable inhabitants of the county, also the list of 150 names from which a deceased Judge of the circuit, who was this Judge's predecessor in office, had drawn the jury for the November term, 1895, of that Court; also the list of 150 names prepared by that Judge for the May term, 1896, the latter including 102 names which were on the list for November term, but not drawn, and 48 additional names. The Judge adopted the list of 150 names prepared by his predecessor, after comparing the same with the list of taxable inhabitants, and added thereto the name of one person in the place of a person disqualified. *Held,* that the names thus obtained were selected by the Judge in conformity with the statute, and the jury validly constituted.

Code, Art. 51, sec. 8, provides that neither a clerk nor deputy, who was present at the writing or folding and depositing of the ballots of jury names in the box shall be designated as the one to draw the names for the grand jury from the box. In this case a deputy clerk transcribed the names on the ballots and helped to fold them, but was not in the room when they were placed in the box. Afterwards the deputy drew the ballots one by one from the box, and gave each one to the Judge, who read aloud the names. *Held,* that this was not such an irregularity as would invalidate the selection of the grand jury.

The proceedings of a grand jury will not be set aside on account of mere irregularities in its selection or drawing, unless they are such as did result, or might have resulted to the prejudice of persons accused.

Appeal from a judgment of the Circuit Court for Dorchester County (LLOYD, J.), quashing an indictment found by the grand jury of Queen Anne's County.

The cause was submitted to the full Bench (except RUS-SUM, J.), on briefs by *Harry M. Clabaugh, Attorney-General,* for the appellants, and *John B. Brown* and *A. S. Golds-borough,* for the appellee.

BOYD, J., delivered the opinion of the Court.

The traverser was indicted at the May term, 1896, of the Circuit Court for Queen Anne's County for obtaining money under false pretenses. The case was removed to the Circuit Court for Dorchester County, and in that Court eight pleas in abatement were filed—all of them being to the effect that the grand jury, which found the indictment was not legally constituted, as its members were not selected or drawn in compliance with the requirements of the statute. The testimony offered on behalf of the traverser does not materially differ from that of JUDGE RUSSUM, who drew the jury, and was the only witness for the State. The Court below found for the traverser on the issues joined on all the pleas, and in reviewing its judgment we will first consider the evidence relating to the method adopted in the selection of the list of the one hundred and fifty names provided for by section 7 of Article 51 of the Code, and then that showing how the forty-eight jurors for the term were drawn.

1. JUDGE RUSSUM testified that he had the list of male taxable inhabitants of Queen Anne's County furnished by the clerk of the County Commissioners and the list of names of one hundred and fifty persons from which the late JUDGE ROBINSON had drawn the jury for the November term, 1895, of said Court, sent to him; with them, Lemuel Dunbracco, a deputy clerk of the Circuit Court for Queen Anne's County, sent a list of names of one hundred and fifty persons; that he compared the latter with one found in the letter box used by JUDGE ROBINSON in the consultation room of the Court of Appeals, headed " Names of persons for May term, 1896, Queen Anne's County," which contained forty-eight names to supply the places of

the forty-eight persons drawn out for the November term,
1895 ; " that after making corrections in the list sent by said
Dunbracco, and seeing that it contained the names of the
one hundred and two persons not drawn at the November
term, 1895, and all the names on the list left by JUDGE
ROBINSON, except Mr. Walls, who was a Judge of the
Orphans' Court and ineligible, he sent the papers, including
a list of taxables, by Mr. Olin Bryan, to said deputy clerk,
Dunbracco, with direction to prepare a list as corrected
and get ready to draw the jury, as the witness would do
so on April 11th, 1896 ;" that on that date he examined
the poll-book which he had not before seen, and finding
Alexander Smith to be a voter, ordered his name to be
placed on the list in the place of Mr. Walls ; that he an-
nounced his adoption and selection of the list already prepared
as stated ; that no name on the list used at the drawing was
either directly or indirectly suggested to him by anyone ; that
the list was composed entirely of the names of the one hun-
dred and two persons not drawn for the November term, 1895,
and the forty-eight names on the list made out by JUDGE
ROBINSON, except the name of Alexander Smith substituted
by him for Mr. Walls ; that he did not consult the poll-books
as to any one but Smith because he had compared the list of
one hundred and fifty names with the list of male taxable in-
habitants, and to the best of his recollection found all the
names on that list, but did not examine it on the day of
the drawing of the jury.

The testimony offered by the traverser shows in addition
that the list of one hundred and fifty names and the ballots
used at the drawing were in Mr. Dunbracco's handwrit-
ing, and that when JUDGE RUSSUM went into the Clerk's
office Mr. Dunbracco at once went into the vault and brought
out a bundle which consisted of the list of names and the
ballots which he gave the Judge.

It is contended on the part of the appellee that the names
thus obtained were not selected by JUDGE RUSSUM and there-
fore the case was directly within the ruling of this Court in

*Avirett* v. *State*, 76 Md. 510. The scope of that decision seems to be misunderstood. The distinct point presented and decided was whether a Judge could accept suggestions of names to be placed on the jury list from members of the bar and others. It was held that he could not, as the statute required the selection to be made by the Judge, and that to permit suggestions from others might result in the selection not only of unfit persons, but of those suggested for improper purposes by designing and unscrupulous men who might impose on the Judge. It was not intimated that the Judge drawing the jury could not use the names of those in the box who were not drawn out at the previous term if he saw proper to do so, and no sufficient cause for the contrary had in the meantime intervened. By no possible construction can the statute or the opinion in the *Avirett case* be made to mean that one Judge cannot confer with or accept the suggestions of another Judge of the same Court in making up the lists or in preparing to draw the jury. The selection of names by JUDGE ROBINSON was as valid and proper as the selection by JUDGE RUSSUM. At the time he made the selection he was a Judge of that circuit, and if one Judge could not use the names of those selected (either by himself or some other Judge of the circuit) at the previous drawing but not drawn out, it would oftentimes exclude from the jury service, for the time being, the most competent and intelligent citizens of the county, simply because they happened not to be drawn at the previous term. No valid reason has been assigned why this should not be permitted, but we can readily see why it should be, for when selected in the first place by one Judge and then at a subsequent drawing they are passed upon by another Judge, it is probable that their qualifications will thus be more carefully scrutinized and thereby better jurors obtained. So far, then, as the one hundred and two names of those in the box, but not drawn at the November term, we think there can be no question about the right of JUDGE RUSSUM to adopt them. The remaining forty-eight (excepting Mr. Smith selected by

JUDGE RUSSUM) were selected by JUDGE ROBINSON and were doubtless intended by him to fill up the lists. It is true that Mr. Dunbracco sent a list to JUDGE RUSSUM, but upon examination he found that it only included the names of the one hundred and two still in the box and of those (the forty-eight) made out by JUDGE ROBINSON. Mr. Dunbracco was not examined, but it is altogether probable that he had prepared the list for JUDGE ROBINSON to use as JUDGE RUSSUM afterwards did, but there is no intimation that any of the one hundred and fifty were suggested by him or any one else to JUDGE ROBINSON or to JUDGE RUSSUM, excepting such suggestions as the latter received from the list made up by his predecessor in office. For reasons we have already given there can be no objection to suggestions thus received. The reasons for not permitting a Judge to receive suggestions from other persons, which are so forcibly stated in the *Avirett case*, do not apply to suggestions from fellow Judges. Without some evidence to the contrary, the presumption is that the names were selected by JUDGE ROBINSON from the poll-books and tax lists and were not suggested by others. The only evidence on the subject is to the effect that all of them were on the tax list, and all may have been on the poll-books for aught that appears in the record.

The question then comes to this, if JUDGE ROBINSON had lived and had used this list in drawing that jury would it have been legal? The argument on the part of the appellee is that it would not have been, because the names were privately selected and the list was made up prior to the time the jury was drawn. If it was lawful to use the names not drawn out at the November term, what possible difference could it make to the traverser or to any one else whether they were written on a new list before or at the actual time of the drawing of the jury? If the Judge drawing the jury had the right to determine, as we have already said he had, that he would use all those names, unless at the time of the drawing some one present showed good cause why one or more should be omitted, would it not be bringing the law

into ridicule to say that although this was true yet the actual transcribing of the names on the list could only take place at the time the jury was drawn ?   Again, if the other forty-eight persons were qualified and competent jurors were they to be excluded merely because the Judge had prior to the day the jury was drawn determined to place their names in the box and had had them written on the list ?   Cannot the Judge inform himself as to the fitness and qualifications of jurors before the day of the actual drawing ?   If that is prohibited it is greatly to be regretted, for it must mean in many cases either that the Judge is confined, in making up the list, to those he is personally acquainted with, or he must select those whom he does not know and cannot therefore comply with the law which requires him to select them " with special reference to the intelligence, sobriety and integrity of such persons."   In the *Avirett case* it was said : " A Judge may very properly, and from the nature of the case must often inform himself by inquiry as to the intelligence, sobriety and integrity of the persons whose names he may select ; but such inquiries are quite different from adopting selections actually made by some one else."   That did not mean that such inquiry was confined to the time the jury was being drawn.   It would often be of little avail then as it is the experience of most Judges that very few attend the drawing of juries, and it may be that no one present is acquainted in some particular election districts that the Judge desires, or in some counties may be required to select from. A Judge may during a term of Court be impressed with the demeanor and apparent intelligence of witnesses from localities in the county he is not well acquainted with, and thinking that such persons would make good jurors he may make memoranda of their names and make inquiries about them which prove to be satisfactory.   If he then makes a memorandum of their names for the next or some other jury, can it be said that such persons are *thereby* disqualified to serve as jurors ?   If the Judge is fortunate enough to have such a memory as to be able to remember those persons he

certainly could at the drawing place their names on the list if they are qualified, and is it to be said that placing them in a memorandum instead of carrying them in his mind is unlawful ?   If then he has obtained forty-eight names from legitimate sources selected by himself, or what is the same thing by another Judge of his circuit while he is such Judge, after such investigation and inquiry as the law will permit, what is there to prohibit him from thus having a full list before the day the jury is drawn ?   He does not technically *select* the names until the time the jury is drawn.   Death may intervene and prevent that particular Judge from completing his work, just as it did in the case of the lamented JUDGE ROBINSON, or some attorney or other person present may inform him that one of the persons has a suit pending, another is absent from the county, or furnish, some good reasons why others should not be on the list.   The Judge would then, if satisfied as to the correctness of the objection to such person, not include them.   He must see that those selected are either on the tax list or poll-books, but if he has satisfied himself as to that he is not required to examine them at the time he completes his selections as that would be a mere idle form.

But it is said that it was held in the *Avirett case* that the list must not be *privately* and *previously* selected, but the names must be selected at the time of the drawing in the presence of such members of the bar and others as see proper to attend.   It is true that the opinion does comment on those facts, but it was not intended to suggest that such private and previous selection of names would of itself invalidate the drawing of the jury.   The list in that case was held to be invalid, because it had been previously made up of names of persons that the Judge knew, and *"from names that had been suggested to him by different persons in the different districts in the county"* and *"some of the names had been suggested by different members of the bar."*   That was the practice disapproved of by this Court, and the danger of such practice was emphasized by the

further fact that the suggestions were privately made, and not at the time the jury was drawn, when those present might, at least, have heard the suggestions and have known the source from whence they came and probably unearth and expose any improper motives that might have actuated anyone in suggesting names.   If the suggestions had been publicly made they would at least have been less likely to have been productive of harm than if made in private and out of the presence of those who assemble at the drawing of the jury.   Some of the names not having been selected by the Judge, but by others, it became an important inquiry in that case to ascertain when and how they were selected, so that it might be the better determined whether the traverser may have been injured.   For after all the true test as to whether proceedings taken by a jury, irregularly selected or drawn shall be set aside, usually is to determine whether the irregularities *did result or may have resulted* to the prejudice of the party accused.   If some one other than the Judge selects the jurors, or any of them, it is manifest that the accused may be injured, but if they are selected by those designated by the law the Judge's, or one of them, without suggestions from others, then the possibility of injury merely because the Judge determined beforehand whom he would select, is, to say the least, exceedingly remote—too much so to invalidate all the proceedings of those thus selected without some evidence that the party objecting has thereby suffered injury. So what was said in the *Avirett case* in reference to the lists being privately and previously made must be taken in connection with what was then being considered and determined—that the list itself was illegal because it contained the names of those suggested by others, which, in the opinion of this Court, was equivalent to being selected by others and not by the Judge.   Although we do not think the method adopted in this case invalidated the jury, for the reasons we have given, the better practice is to make up the lists and have the ballots prepared at the time the jury

is drawn, even when the names of those remaining in the box are to be used again.

What we have said in reference to the list would apply also to the ballots being previously prepared, for they were taken from the list, and were either all folded by the Judge, as he recollects was done, or by him and a deputy clerk, in his presence. Whether the deputy assisted in this is wholly immaterial, as the statute does not require the ballots to be rolled or folded by the Judge himself, but does say that they should be placed in the box by the Judges with their own hands, which was done in this case.

2. The statute, however, does provide that neither the clerk nor deputy who was present at the writing, rolling or folding and depositing the ballots in the box shall be designated by the Judge as the one to draw the forty-eight names from the box. In this respect it was not strictly followed, as the evidence shows that Mr. Dunbracco did write the ballots, and, according to the evidence of some of the witnesses, did help to fold them, although he was sent out of the room when they were placed in the box. But that was a mere irregularity, and not such as could invalidate the drawing. The testimony is that the Judge, after placing the ballots in the box closed it, shook it well and stirred up the ballots out of the presence of Mr. Dunbracco and then called him in the room. The latter then drew out of the box, one by one, forty-eight of the ballots, and gave each one, as it was drawn, to the Judge, who read aloud the names. There is no suggestion that there was anything wrong attempted by the deputy, or that he could have, in any way, drawn any particular ballot or ballots to the exclusion of others. One of the gentlemen, who is now counsel for the traverser, was present, and was. a witness in reference to the drawing, but there is no intimation by him or any of the other witnesses of any actual wrongdoing or of anything that had the appearance of it. Now, whilst it is important that the spirit of the statute, and the letter of it too, as far as reasonably possible, be followed and obeyed,

yet it is not every irregularity or departure from the terms of the statute that will invalidate the drawing of juries. Circumstances might arise that would make it impossible to comply with the provision now under consideration. For example, if there is only one deputy the clerk might be taken too ill either to attend the drawing of the jury or to appoint another deputy within the time fixed by the statute to draw the jury, yet, if under those circumstances the deputy both write the ballots and draw the forty-eight ballots from the box it would be going very far to say that all the proceedings of a grand jury selected from the forty-eight names thus drawn would be thereby invalid. The evidence on the part of the traverser shows that the ballots were all written on "white paper of the same size," and when we remember that and how they were folded, drawn, &c., it would seem to have been impossible for anyone to have drawn or to have left in the box any particular ballot or ballots. In *State* v. *Glasgow*, 59 Md. 209, it was held that unless any irregularities, incident to carrying out the directions of the jury law in good faith, "should be shown to materially violate it, or so affect the juries as to prejudice the rights of the citizen, they should not be treated as fatal." The authorities cited in that case show that although there be irregularities in the selection and drawing of a jury the proceedings will not be set aside, unless the Court can see that they have resulted, or may result, to the prejudice of the party accused, and other authorities might be cited to the same effect.

For the reasons we have given we think there was error n sustaining the pleas in abatement and quashing the indictment in this case.

The judgment must, therefore, be reversed and the cause remanded in order that the traverser may be tried upon the indictment against him.

*Judgment reversed and cause re-*
*manded.*

(Decided February 24th, 1897.)