HARAWAY v. STATE.

4239                                      159 S. W. 2d 733

Opinion delivered February 16, 1942.

*Jas. S. McConnell,* for appellant.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

McHANEY, J.   This is the second appeal of this case. For the opinion on the former appeal see *Haraway* v. *State,* 202 Ark. 845, 153 S. W. 2d 161. The judgment of conviction of larceny was reversed on the former appeal because, it was held, that the trial court abused its discretion in denying appellant the right to prove by offered evidence, on a motion to quash the indictment against him, a colored man, that there had been, for many years, a systematic exclusion of citizens of the colored race from serving on the grand and petit juries in Howard county on account of their race.   It was remanded with directions to permit appellant to make this proof, and, if established, to quash the indictment.   This the trial court did.   The proof was made and the indictment quashed.   The court then directed the sheriff to summon a special grand jury to appear at 9 o'clock the following day, the language of the court being "to summon 18

special grand jurors to appear at said time and place to investigate the charge against defendant herein." In obedience to the order of the court, the sheriff summoned 18 persons, all colored, 16 of whom were empaneled as the special grand jury. On the same day said special grand jury returned another indictment against appellant, again charging him with the crime of grand larceny for the stealing of "one ten-pound slab of smoked bacon meat and approximately forty (40) pounds of creamery butter, the property of Tollett School District No. 38 of Howard county, Arkansas, of the value of more than ten ($10) dollars."

Thereafter appellant moved to quash this indictment on two grounds. The first is that the order empaneling the special grand jury is illegal, void and of no legal effect, in that it deprived appellant of the equal protection of the constitution and laws of both the state and of the United States and that the proceedings. thereunder were without due process of law. The second ground of the motion is that the present indictment was not returned by said special grand jury of its own free will; that the prosecuting attorney was present with the grand jury while it was deliberating, in violation of § 3818 of Pope's Digest, all of whom were of the negro race, "and by undue influence, intimidation, and violent argument, induced and practically forced said special grand jury to return said indictment."

The argument on the first ground is based on the fact that all the members of the special grand jury were negroes, and that it is just as much a discrimination to empanel an all negro grand jury as it was to empanel an all white grand jury in discrimination against the negro race. We cannot agree that this is true or that appellant has any more right to complain than a white man would have for being indicted by an all white grand jury. No case is cited to support the statement and we know of no such case. It appears to us that, if there were any discrimination, it was in his favor. The order of the court did not require or direct the sheriff to summon an all negro grand jury, and appellant made no objection on this account before or at the time of empaneling the

jury, but took a chance on its action by waiting until after the return of the indictment to question the procedure, and we think he has waived it.

As to the second ground in the motion to quash, the court heard evidence, a number of the special grand jurors being called, as also the prosecuting attorney and his deputy, which wholly fails to sustain the allegation. Therefore, the court did not err in overruling the motion to quash.

Thereafter, the case came on for trial, and, on motion of appellant the regular panel of petit jurors was quashed for the same reason the first indictment was quashed, and the sheriff was ordered to summon "26 good men to serve as special petit jurors for the remainder of this term," which was done, and four negroes were empaneled and sworn on such special petit jury. We do not understand that appellant makes any complaint as to this action, nor of the fact that the prosecuting attorney, in exercising his right of peremptory challenge, excused the four negroes from service on said jury. But if complaint is made we think no error was committed, as appellant was not entitled to any particular juror, but was entitled to trial by a fair and impartial jury. The discrimination against which the law protects is in the empaneling of the jury. It is not contended that the trial jurors were not qualified.

Trial resulted in a verdict and judgment of conviction and he was sentenced to the penitentiary for a term of two years.

For a reversal of this judgment, it is first argued that there is no evidence of larceny in this case, except the alleged confession, which, it is said, is uncorroborated. In other words, that the evidence is not sufficient to support the verdict. We cannot agree. Appellant, a negro, is, or was, the principal of the school in Tollett School District in Howard county, and was paid a salary of $1,500 per year, plus $20 per month for expenses. In January, 1941, the County Welfare Department began furnishing government commodities to the Tollett School District to be used in the preparation of hot lunches for

needy school children. They were stored in a room in the school building and were kept under lock and key. The hot lunch program was sponsored by the P.-T. A. of the district and we think the commodities so delivered belonged to the district, or that the district had such a possessory right to them as will support an allegation of ownership. The sheriff received information that appellant was in possession of such government commodities illegally and went to Tollett to make an investigation. He searched appellant's home with his permission and found a quantity of such commodities including a tub of butter containing 30 pounds, four pounds of prunes, three of raisins, two buckets of lard, a slab and some pieces of another slab of bacon and a small quantity of graham flour. He admitted taking these commodities, but said he had done so for safe keeping. Later he made and executed a sworn confession of guilt, which was admitted in evidence over his objections, but we do not understand that he now contends that error was committed in this regard. The confession consists of questions and answers, and is as follows:

"Q. Haraway, do you understand that you are not forced to make any statements and that any statements that you may make can be used as evidence against you? A. Yes, sir. Q. And you are making this statement of your own free will and accord? A. Yes, sir. Q. Have you been in any way abused, threatened, or promised any leniency if you will make this statement? A. No, sir. Q. Now Haraway, you understand that you are being accused of taking commodities furnished by the Welfare Department to the Tollett School District and converting same to your own use, have you ever taken any of the commodities furnished to the Tollett District for the purpose of converting same to your own use? A. Yes, sir. Q. How long has the Tollett School District been receiving commodities from the Welfare Department? A. Since January this year. Q. What were these commodities which were furnished by the Welfare Department supposed to have been used for? A. To be used in the preparation for hot lunches for the school children. Q. Now just tell me what commodities you have taken

and converted to your own personal use, and about the date they were taken. A. Early in January I got the following: one sack of flour, one pound of lard, five or six cans of condensed milk, one 25-pound box of raisins, one 25-pound box of prunes, about 12½ pounds of dried peaches. Q. Is that all you took on the trip you made in the early part of January, 1941? A. Yes, sir. Q. Have you made subsequent trips to the commodity store room and secured additional commodities for your own use? A. Yes, sir. Q. About what date did you make the next trip, and what did you get at that time? A. Around the 24th of January, and I got one case (48) cans of condensed milk. Q. Did you ever get any meat from the commodity store house, and convert it to your own use? A. Yes, sir. Q. When was that? A. About February 25, 1941. Q. How much meat did you get? A. I got a slab which weighed about six or seven pounds. Q. Did you get anything else at that particular time? A. No, sir. Q. Have you ever at any time taken any more meat from this store house and converted it to your own personal use? A. Yes, sir. Q. When was that? A. That was February 14th. Q. How much meat did you get on February 14th? A. About a 10-pound slab. Q. Did you get anything else at that date? A. Yes, sir. Q. What? A. Part of a bucket of butter. Q. How much butter was in the bucket? A. About forty pounds. Q. How much butter was originally packed in that bucket? A. Sixty-four pounds, net. Q. What became of the remaining twenty-four pounds? A. It was used by the Home Economics Department before I took the butter. Q. Have you ever taken any other commodities from the commodity house and converted same to your own use other than what you have already mentioned? A. We took some graham flour. Q. How much? A. About eight or ten pounds. Q. Do you think of anything else? A. That is all, I think. Q. What position do you hold with the Tollett School District? A. Principal. Q. How long have you been principal of the Tollett District? A. At the end of this term it will be ten years. Q. What is your annual salary? A. $1,500. Q. Are you allowed any certain amount for

expenses, etc.? A. Yes, sir. Q. How much? A. $20 a month. Q. Then what is your total annual compensation? A. $1,740. Q. Have you authorized or consented to anyone else taking any commodities from the store house for their own personal use? A. Yes, sir. Q. Who? A. Willie Brown, Avis Freeman and Daisy Mills. Q. What position do they hold with this school district? A. Willie Brown is president of the board and Avis Freeman and Daisy Mills are teachers. Q. Did you consent for Willie Brown to take whatever commodities he might want to compensate him for hauling the commodities from Nashville to Tollett? A. Yes, sir. Q. Do you know of any additional facts concerning these commodities which have been taken from the Tollett store house that you would like to tell? A. Yes, sir, Andrew Brown took some commodities. Q. Did he take commodities with your knowledge and consent? A. Yes, sir. Q. What did he take? A. Some flour, some potatoes, some milk, some prunes and some milk. Q. Then you know that Willie Brown, Avis Freeman, Daisy Mills, and Andrew Brown were all taking commodities from the store house and were using them for their personal use and you consented for them to do so? A. I am not sure that Daisy and Avis Freeman got any commodities, but I had consented for them to. Q. Had you consented for Frederica Davis to also take what commodities she might need from the store house? A. Yes, sir. Q. Then you do know that Willie Brown, Andrew Brown, and Frederica Davis have taken commodities from the Tollett School District, and they have done so with your knowledge and consent? A. Yes, sir. Q. Is there any other fact which you want to tell now in this connection? A. That is all I know about. Q. Did you before the commencement of this statement and before being advised that this statement was of your own free will and accord and could be used as evidence against you, take an oath, which stated: 'Statements which I am about to give to the prosecuting attorney of the Ninth Judicial District of the state of Arkansas, of which Howard county is a part, shall be the truth, the whole truth and nothing but the truth, so help me God.' A. Yes, sir. Q. And

do you now state that the statements above are the truth, the whole truth and nothing but the truth so help me God? A. Yes, sir.

"Witness my hand and seal this the 18th day of February, 1941.

"(Signed)    C. C. Haraway."

The statute, § 4018 of Pope's Digest, provides that a confession, not made in open court, "will not warrant a conviction unless accompanied with other proof that such offense was committed." We have many times held that an extrajudicial confession is sufficient to support a conviction, when there is proof that the crime was committed by some one. *Mellon* v. *State,* 43 Ark. 367; *Smith* v. *State,* 168 Ark. 253, 269 S. W. 995; *Graham* v. *State,* 202 Ark. 981, 154 S. W. 2d 584. We think it was shown by abundant evidence that the crime of larceny was committed, and it was stipulated that the value of the commodities set out in the indictment exceeded $10, so the charge of grand larceny is sustained.

There is another well settled rule of law that concludes appellant on the sufficiency of the evidence, and that is, possession of property recently stolen is sufficient to support a conviction for the larceny thereof, where the explanation of the possession is not satisfactory to the jury. Appellant repudiated his confession and explained his possession by saying he had it for safe keeping. The jury did not accept his repudiation or his explanation, so the verdict is supported by substantial evidence.

Other assignments of error are suggested, including the objection to the testimony of Mrs. Cowling and Senator Steele and the giving of instruction No. 3 and refusal to give requested instruction No. 10, all of which we have considered, and find them without substantial merit.

We find no error, and the judgment is accordingly affirmed.