# STATE *v.* MADISON

[No. 408, September Term, 1965.]

266

*Decided, per curiam, October 21, 1965.*

*Opinions filed November 5, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, MARBURY, OPPENHEIMER and BARNES, JJ.

*Thomas B. Finan, Attorney General,* for appellant.

*George L. Russell, Jr.,* for appellee.

OPPENHEIMER, J., delivered the majority opinion of the Court. HORNEY and BARNES, JJ., dissent. Dissenting opinion by HORNEY, J., at page 275, *infra*.

In *Schowgurow v. State,* 240 Md. 121, 213 A. 2d 475, we held that because of the decision of the Supreme Court of the United States in *Torcaso v. Watkins,* 367 U. S. 488 (1961), reversing the decision of this Court, the provision of Article 36 of the Maryland Declaration of Rights requiring demonstration of belief in God as a qualification for service as a grand or petit juror was in violation of the Fourteenth Amendment to the United States Constitution. We held, further, that our decision was not to apply retroactively except for convictions which had not become final before rendition of our opinion. In this case, Madison had been indicted in Baltimore City, for statutory rape, by a grand jury which, it has been stipulated, was impaneled from persons who, as a condition of their service as jurors, were required to show their belief in the existence of God. Madison pled not guilty. He had not been tried at the time our opinion in *Schowgurow* was rendered. He moved to dismiss the indictment and the presentment returned against him. Madison is a member of the Apostolic faith who believes in the existence of a Supreme Being. Schowgurow was a Buddhist whose religion does not teach that belief. The State contends that Madison is not entitled to question the validity of the indictment because he is not a member of the class unconstitutionally excluded from the grand jury which indicted him.

Arguments on the motion were had before Judge O'Donnell in the Criminal Court of Baltimore. He granted the motion, the State appealed, and because of the importance of the case in the administration of justice in Maryland, with the consent of the parties, we heard the appeal within a week. After argument, we affirmed Judge O'Donnell's dismissal of the indictment by per curiam order. The reasons for our order follow.

In his clear and thorough oral opinion, Judge O'Donnell pointed out that, as a result of *Schowgurow,* under the decisions of the Supreme Court, the grand jury which indicted Madison was not selected in accordance with law; that the unlawful method of its selection was not a mere "harmless irreg-

ularity" but a violation of the Federal Constitution; and that, under our basic law, Madison's timely right to object need not have any ground other than the fact that he was indicted by that grand jury. We agree.

Supreme Court decisions requiring that the defendant be a member of the excluded class in order to have standing to attack the constitutionality of the method of jury selection under a law nondiscriminatory on its face are not here in point.[1] In *Schowgurow*, we pointed out that, in such cases, "the question was whether, under a law, nondiscriminatory on its face, through administration or practice, there had been exclusion as a matter of fact. Here, there has been systematic exclusion for over a century by the mandate of the Maryland Constitution."

Where, as here, the unconstitutional discrimination is an integral part of the governing law, a defendant in a criminal case whose conviction has not become final is not required to show

---

1. For example, in Fay v. New York, 332 U. S. 261 (1947), the petitioners had attacked the constitutionality of the special or so-called "blue ribbon" jury as used by state courts in the State and County of New York. The Court did not find any constitutional offense in the statutory standards prescribed for the special panel and referred to the fact that the petitioners were not members of any excluded class only in connection with their claim that the procedure under which the special juries were selected was unconstitutional because of deliberate administrative exclusion of certain classes of persons, which, the Court found, had not been proved. Brown v. Allen, 344 U. S. 443 (1953) involved only the operation of the method used by North Carolina in selecting juries; there was no unconstitutional discrimination in the statute. In Rawlins v. Georgia, 201 U. S. 638 (1906), the plaintiffs in error contended, not that there was an unconstitutional exclusion of classes from jury service in the statute, but that the exclusions were made by the jury commissioners; the Court held that, while it did not appear that any of the defendants belonged to any of the excluded classes, the exclusion was not the result of race or class prejudice. In cases such as Norris v. Alabama, 294 U. S. 587 (1935) and Hernandez v. Texas, 347 U. S. 475 (1954) in which the Court considered the evidence as to prejudice against the race or class of which the petitioner was a member, the unconstitutional exclusion was the result of the administration of the statutes which were valid on their face, and did not, as here, result from exclusion required by the basic law.

that he is prejudiced by the application of the law. Every person accused of crime has the right to be tried under what has been determined to be the law of the land. In *Schowgurow,* the State, as here, contended there had been no showing of actual prejudice. We held that where the system of jury selection on its face provides for illegal discrimination and exclusion, an actual showing of prejudice is unnecessary. It is the danger of abuse resulting from the method of selection which renders it unconstitutional. We pointed out that the exclusion of non-believers was not only authorized but demanded by the Maryland Constitution and that the resulting danger of abuse, under the decisions of the Supreme Court, obviates any need to show individual prejudice.

Almost a century ago, this Court held that, when the method of selection of a grand jury is clearly invalid, the challenge of a defendant to his indictment by that body must be sustained, without any showing of prejudice. *Clare v. State,* 30 Md. 164 (1869). In that case, the defendant pleaded in abatement that the mandates of the law had not been followed in the selection of the grand jury, because its members had been selected, not by the judges as the law required, but by a court clerk. The lower court found these allegations to be factually correct, but held they were mere informalities, not fatal defects. The pleas were overruled and the defendant was convicted. On appeal, we reversed the judgment of conviction, holding that the lower court erred in overruling the pleas. The defendant, Clare, had not alleged or proved any specific prejudice as to him in the unlawful method of selection. We said, however:

> "Under any government of law the trial of persons accused of crime, from its commencement to the conclusion, should be scrupulously conducted according to the requirements of the law. Not only the sacred administration of public and private justice, but the good order of the community, the security and protection of life, liberty and property, cannot be preserved, except by the inflexible maintenance and impartial enforcement of the statutory, as well as the fundamental laws of the land." 30 Md. at 178.

In *State v. Vincent,* 91 Md. 718, 47 Atl. 1036 (1900), the appellee was indicted for perjury. He demurred to the indictment, alleging, *inter alia,* that the indictment showed on its face that the grand jury was composed of only 22 persons, when the law required 23 members. The lower court sustained the demurrer and quashed the indictment, and, on appeal, we affirmed. In *Vincent,* as in *Clare,* there was no allegation or showing of individual prejudice to the person indicted. We held that the invalid omission of the twenty-third juror of itself created a presumption of prejudice, and quoted the statement in *Clare* that government under law requires that the trial of persons accused of crime be conducted according to the law of the land.

In *Walter v. Indiana,* 208 Ind. 231, 195 N. E. 268 (1935), the appellant had been convicted of embezzlement. He had unsuccessfully challenged the array of the jury which tried him on the ground that the commissioners who selected the names to be drawn as jurors had purposely and intentionally excluded the names of women. The state statute required that the names be selected from the names of all qualified voters, which the court construed to mean there could be no exclusion because of sex. The exclusion of women by the jury commissioners was admitted. The Supreme Court of Indiana reversed the judgment; it held that the lower court erred in overruling the challenge to the array, even though the appellant was not a member of the class improperly excluded, and even though he showed no specific prejudice. The court said:

> "A jury not organized in accordance with the statute is an unlawful jury, and in support of a challenge it is not necessary to show that the members of the jury are not qualified jurors * * *
>
> "It does not suffice to say that appellant can not show that his substantial rights were impaired, or that the jurors were biased or prejudiced against him, or that he did not have a fair trial * * * This right [the appellant's right to have the jury selected without illegal exclusion of any class] may not legally be denied, and if it is denied we must presume that the defendant was prejudiced thereby." 208 Ind. at 236-37.

*Walter* was cited with approval in *Thiel v. Southern Pacific Co.,* 328 U. S. 217 (1946). In that case, a civil action for damages had been brought in a United States District Court. The petitioner, a salesman, moved to strike the entire jury panel on the ground that the jury commissioners had deliberately and intentionally excluded from the jury lists all persons who worked for a daily wage. The exclusion was admitted, but the lower court denied the challenge, and the jury returned a verdict for the respondent. On appeal, the Supreme Court reversed on the ground that petitioner's motion to strike the panel should have been granted. The Court acted in the exercise of its power of supervision over the administration of justice in the federal courts.[2] It said, "On that basis it becomes unnecessary to determine whether the petitioner was in any way prejudiced by the wrongful exclusion or whether he was one of the excluded class." 328 U. S. at 225.

In *Ballard v. United States,* 329 U. S. 187 (1946), the petitioners had been indicted and convicted in a District Court for using and conspiring to use the mails to defraud. Both the grand and petit juries had been drawn from panels from which

---

2. In McNabb v. United States, 318 U. S. 332, 340-41 (1943) Mr. Justice Frankfurter discussed the relationship between the exercise of the Supreme Court's power of supervision over the administration of justice in the federal courts and its review of state action in due process of law cases. He said:

"Judicial supervision of the administration of criminal justice in the federal courts implies the duty of establishing and maintaining civilized standards of procedure and evidence. Such standards are not satisfied merely by observance of those minimal historic safeguards for securing trial by reason which are summarized as 'due process of law' and below which we reach what is really trial by force. Moreover, review by this Court of state action expressing its notion of what will best further its own security in the administration of criminal justice demands appropriate respect for the deliberative judgment of a state in so basic an exercise of its jurisdiction. Considerations of large policy in making the necessary accommodations in our federal system are wholly irrelevant to the formulation and application of proper standards for the enforcement of the federal criminal law in the federal courts."

women admittedly had been systematically excluded. The defendants had duly moved to quash the indictments and to challenge the array of petit jurors. The Court reversed the convictions, acting, as in *Thiel,* in the exercise of its power of supervision over the administration of justice in the federal courts. In its opinion, the Court said that:

> "[R]eversible error does not depend on a showing of prejudice in an individual case. The evil lies in the admitted exclusion of an eligible class or group in the community in disregard of the prescribed standards of jury selection. The systematic and intentional exclusion of women, like the exclusion of a racial group, *Smith v. Texas,* 311 U. S. 128, or an economic or social class, *Thiel v. Southern Pacific Co., supra,* deprives the jury system of the broad base it was designed by Congress to have in our democratic society * * * The injury is not limited to the defendant—there is injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts." 329 U. S. at 195.

In *Cassell v. Texas,* 339 U. S. 282, 287 (1950), the Court was faced with a problem of state action. It reversed the conviction because the state trial court had denied the appellant's motion to quash the indictment on the ground there had been an unconstitutional discrimination through the selection of white men only on the grand jury that indicted him. While Cassell was a Negro, the Court said: "An accused is entitled to have charges against him considered by a jury in the selection of which there has been neither inclusion nor exclusion because of race."

In *Allen v. State,* 110 Ga. App. 56, 137 S. E. 2d 711 (1964), referred to in *Schowgurow,* the defendant, a white man, had moved to quash the indictment against him and had challenged the array of traverse (petit) jurors on the ground that Negroes had been systematically and deliberately excluded from serving as grand and traverse jurors. The lower court assumed the defendant's allegations to be true, but denied his motion. The case was transferred to the Georgia Court of Appeals. The court

held that the trial court erred in overruling the defendant's motion and challenge and reversed. The decision rested on two separate grounds. The court said that, were it necessary to show prejudice, judicial notice might be taken that the defendant, who was active in promoting participation in government by Negroes, would be the object of prejudice. It also held, however, citing *Thiel,* that it was unnecessary to determine whether the petitioner was in any way prejudiced by the wrongful exclusion or whether he was one of the excluded class because the exclusionary practice resulting in the failure of the jury to represent a cross-section of the community is condemned by the Fourteenth Amendment. On this phase of the case, the court said:

> "We are of the opinion that any system that results in the consistent selection of jurors from a group or portion only of those available for service in that office, rather than from those available without discrimination, does not accord to any defendant the type of jury to which the law entitles him." 110 Ga. App. at 62.

In *Schowgurow* it was held that because of the Supreme Court's decisions the exclusion of persons from juries because they did not believe in God was invalid. By that decision, in all pending and future cases, indictments by grand juries and criminal trials by petit juries selected under the exclusionary method formerly prescribed by Article 36 of our Declaration of Rights, were declared defective. As *Clare* and *Vincent* make clear, once it is established that the method of the grand jury's selection is unconstitutional, any accused indicted by such a jury has the right to have the indictment dismissed. He has this right, not because of any individual prejudice to him but because, under the basic law of our land, all persons accused of crime have the right to be tried in accordance with the requirements of our legal system.

The Supreme Court's decision in *Torcaso,* which we held in *Schowgurow* rendered the exclusionary mandate of Article 36 of our Declaration of Rights invalid, rested upon the establish-

ment of religion clause of the First Amendment to the Federal Constitution, made applicable to the states through the Fourteenth. Madison's right to challenge his indictment however, after *Torcaso* and *Schowgurow,* rests upon the due process and equal protection clauses of the Fourteenth Amendment and upon the law of the land provision of Article 23 of the Maryland Declaration of Rights. When the law of the land has been made clear (even when, as here, it is established by the reversal by the Supreme Court of a decision of this Court) a person accused of crime, to be entitled to due process, does not have to show that he would be injured if due process is lacking. The right to be tried in accordance with the law is the constitutional privilege of every man.

Equal protection of the laws, as well as due process, is involved. Under the State's contention, while Schowgurow, a Buddhist, was held entitled to a new trial because he was indicted and tried by juries unconstitutionally selected, Madison, a member of the Apostolic faith, could not object to his indictment by a grand jury selected in the same unconstitutional manner. The only difference between the two men, in this respect, is the nature of their religious beliefs. Discrimination because of opinions about religion is one of the classic examples of denial of the equal protection of the laws. *Niemotko v. Maryland,* 340 U. S. 268, 272-73 (1951) ; *Juarez v. State,* 102 Tex. Crim. 297, 303-04, 277 S. W. 1091 (1925). If we were to uphold the State's contention in this case, the effect would be that pending indictments against persons who believed in a Supreme Being could not be successfully challenged, while indictments against others who do not have that belief would be dismissed. There would, in effect, be an unconstitutional discrimination in favor of non-believers as against believers.

The State points to the fact that a decision in its favor in this case would materially reduce the number of indictments which must be rebrought. We made it clear in *Schowgurow* that the decision in that case, for the reasons of public policy in the administration of justice therein stated, with the exception noted, is to apply only prospectively. Nevertheless, we recognize that there will be some interference, for the time being, with the

expeditious disposition of pending criminal cases.[3] This additional, if temporary, burden upon our courts and the State results because, under the decision of the Supreme Court in *Torcaso,* the fundamental principles of due process and the equal protection of the laws require that all accused persons in pending criminal cases shall have the right to ask that they be indicted and tried by juries selected in the manner which the Supreme Court's decision has made necessary. We pay a price for the federal nature of our government, but, without it, we would not be a nation. Under our governmental system, the decisions of the Supreme Court must be controlling even when, as here, the decision makes invalid a long-established provision of the Maryland Constitution, previously held valid by this Court.

HORNEY, J., filed the following dissenting opinion in which BARNES, J., concurred.

I do not agree that all pending indictments or trials by grand or petit jurors selected under the provisions of Article 36 of the Declaration of Rights are defective as to those indictees who profess a belief in God. Nor do I agree that the sustaining of an indictment against a person who believes in God and the dismissal of an indictment against a person who does not have such a belief would invariably constitute an unconstitutional discrimination in favor of nonbelievers as against believers.

*Torcaso v. Watkins,* 367 U. S. 488 (1961), held that a non-

---

3. William L. Marbury, Esq. president of the Maryland State Bar Association, has stated that:

"[W]hile there is some confusion in the courts, that is only temporary. The courts themselves are facing up to the problem and adapting their procedures to the legal situation.

"All noncriminal matters are being tried in legal order. There will be no wholesale release of prisoners on a mere technicality. Jurors are still under the obligation to perform their civic responsibilities and duties to the best of their ability and in furtherance of the public interest * * *

"[T]he public may rest assured that no more than temporary dislocations in the administration of justice need be anticipated." The Sun, Oct. 24, 1965, p. 24, col. 1.

believer seeking an appointment as a notary public could not be compelled to declare he believed in the existence of God. But the decision in that case did not proscribe the right of a believer to declare his belief in God as a part of the official oath of office if he chose to do so. It is therefore as much the right of a believer to declare his belief as it is the right of a nonbeliever to decline to do so. For this reason, and because a believer would not ordinarily be injured or prejudiced thereby, the former practice of an elected or appointed officeholder making a declaration of his belief in God in taking an oath of office has not been discontinued.

By the same token, although the majority in *Schowgurow v. State,* 240 Md. 121, 213 A. 2d 475 (1965), having taken judicial notice of the fact (there being no showing of actual prejudice) that nonbelieving jurors had been excluded from serving as jurors, held, in equating the exclusion of nonbelievers to the exclusion of persons because of race or national origin, that the challenges of the appellant to the composition of the grand jury which indicted him and the petit jury which tried him were valid and that the motions to dismiss the indictment and the panel of petit jurors should have been granted, the decision nevertheless, as I understood it, was limited to the appellant and other members of the class that had been excluded from the jury for lack of belief in God.

While that part of Article 36 requiring jurors to profess a belief in God has been declared unconstitutional as to criminal defendants who are nonbelievers, there is, as I see it, no reason for holding that Article 36 is also null and void as to the appellee in this case who is a believer in the absence of a showing (and there was none) that he was actually prejudiced or otherwise had standing to contest the validity of the indictment. The reasoning of the majority carried a step further, could result: (1) in all officeholders (including the members of this Court), who declared a belief in God as a part of their official oath, being held to be unqualified to perform the duties of their office; and (2) in criminal defendants, who are still imprisoned, regardless of when they were indicted or tried and convicted by a jury composed of believers only, being entitled to reindictment and new trials. While the first statement might

be said to be an absurdity, the second, despite its catastrophic effect, is not beyond the realm of possibility. Not only was the holding of the majority in this case unnecessary under the circumstances, but the cases clearly do not compel the unfortunate result it reached.

As to necessity, since there was no showing of any prejudice to the appellee, who professes to be a member of the Apostolic faith and therefore a believer in God, in connection with the selection of the jurors drawn at the 1965 September Term of the Criminal Court of Baltimore, which had been accomplished in accordance with the constitutional requirements then existent, it is inconceivable to me how a believer in God could possibly have been prejudiced by the manner in which the grand jurors were sworn. The record, such as it is, indicates that when the judge, whose duty it was to charge the grand jury, inquired whether there were any among them who disbelieved in God, all jurors answered in the negative. But had *Schowgurow* been decided and there had been affirmative answers, then all that the clerk of court need have done was swear those who professed to be believers by administering the customary grand jury oath and separately affirm those who were nonbelievers (possibly under penalty of perjury) by administering an affirmation similar to that taken by the members of those religious denominations or sects who decline to take an oath. In so doing, the beliefs of each member of the grand jury would have been gratified and the rights of those indicted by the jury — whether believers or nonbelievers—would not have been violated. And in that event, since no constitutional question would have been involved, it would have been unnecessary to discharge the grand jury as then constituted and select another one which may or may not have consisted of believers only, nonbelievers only, or both believers and nonbelievers. It follows therefore, it seems to me, since the appellee, who is a Christian, has shown no actual prejudice to himself by having been indicted by a jury of believers, that there is in this case no necessity to require reindictment of the appellee by another grand jury drawn without regard to the religious beliefs of the members thereof.

While it was held in *Clare v. State,* 30 Md. 163 (1869), that

an indictment found by grand jurors who had been selected from a list prepared by a deputy clerk instead of by the judges was fatally defective and should have been quashed and the traverser reindicted; and it was also held in *State v. Vincent,* 91 Md. 718, 47 Atl. 1036 (1900), that an indictment by a grand jury composed of less than twenty-three members was invalid as to a traverser who had not waived the defect, neither of these cases, both of which concerned the violation of statutory rather than fundamental law, is authority for the statement of the majority that "once it is established that the method of the grand jury's selection is unconstitutional, any accused indicted by such jury has the right to have the indictment dismissed." On the contrary, in *State v. Scarborough,* 55 Md. 345 (1881), it was said that, in the absence of a showing to the contrary, there is a presumption of law that a grand jury was legally and regularly drawn and empaneled; in *State v. Glascow,* 59 Md. 209, 212 (1882), it was said of a statute (not a constitutional provision) that unless the irregularities therein are such as "to materially violate it, or so affect the juries as to prejudice the rights of the citizen, these irregularities should not be treated as fatal"; and in *State v. Keating,* 85 Md. 188, 198, 36 Atl. 840 (1897), it was said that "although there be irregularities in the selection and drawing of a jury the proceedings will not be set aside, unless the Court can see that they have resulted, or may result, to the prejudice of the party accused." None of these cases, though infrequently cited, have ever been overruled. See *State v. Vincent, supra,* at p. 729; *King v. State,* 190 Md. 361, 58 A. 2d 663 (1948); and *Young v. Lynch,* 194 Md. 68, 69 A. 2d 787 (1949).

With respect to the cases in other jurisdictions cited by the majority for the proposition that where the system of jury selection on its face provides for illegal discrimination and exclusion an actual showing of prejudice is unnecessary, such as *Walter v. Indiana,* 195 N. E. 268 (Ind. 1935), *Ballard v. United States,* 329 U. S. 187 (1946) and *Cassell v. Texas,* 339 U. S. 282 (1950), they are no more than additional authority for the holding in *Schowgurow* that the exclusion of persons from juries because they did not believe in God was invalid. None of them, as I read them, are authority for the holding of the ma-

jority in this case that all pending and future indictments or trials by grand or petit jurors selected under the method prescribed by Article 36, *supra,* are *ipso facto* fatally defective as to the appellee without showing that he had been prejudiced.

Nor do the cases, as I read them, compel the holding reached by the majority in this case. Since, if it be assumed as the majority has done, that the situation here is analogous to the circumstances in those cases dealing with systematic exclusion of persons because of race, national origin and sex, it seems apparent to me that the appellee, a believer in God, who has shown no prejudice, has not been harmed by having been indicted by a grand jury composed of believers only. The traditional doctrine concerning such exclusions is embodied in the "same-class" rule which is to the effect that if the defendant is a member of the group or other class excluded the danger of prejudice is great enough for a court to hold that the exclusion is unconstitutional without a showing of actual prejudice; but if he is not a member of the excluded group or class the danger is not great, and before the court will hold the exclusion unconstitutional as to him, it must find that the defendant was actually prejudiced.

This has been the established rule in other states for some years. See, for example, *Griffin v. State,* 190 S. E. 2 (Ga. 1937); *Haraway v. State,* 159 S. W. 2d 733 (Ark. 1942), *cert. den.* 317 U. S. 648 (1942); *State v. Koritz,* 43 S. E. 2d 77 (N. C. 1947), *cert. den.* 332 U. S. 768 (1947); *State v. Jones,* 57 A. 2d 109 (Del. 1947); *People v. White,* 278 P. 2d 9 (Cal. 1954), *cert. den.* 350 U. S. 875 (1956); *State v. Lea,* 84 So. 2d 169 (La. 1955), *cert. den.* 350 U. S. 1007 (1956); and *State v. Clifton,* 172 So. 2d 657 (La. 1965). In *State v. Lea, supra,* it was said at p. 170: "As we take it, the defendant is contending that he has been discriminated against by the exclusion of a race or class of persons to which he does not belong. In our review of the decisions of this Court and the Supreme Court of the United States, we do not find any case wherein the verdict of a jury was reversed on the ground of systematic exclusion of a class or race except where the accused was a member of that class." The Supreme Court of the United States has never actually passed on the question. In *Fay v. New*

280

*York,* 332 U. S. 261 (1947), the Court pointed out that it had "never entertained a defendant's objections to exclusions from the jury except when he was a member of the excluded class," and it has not done so since.

While it was said in *Allen v. State,* 137 S. E. 2d 711 (Ga. App. 1964), that the selection of "jurors from a group or portion only of those available for service in that office, rather than from those available without discrimination, does not accord to any defendant the type of jury to which the law entitled him," it must not be overlooked that the white defendant in that case was active in voter registration among Negroes and so would have been prejudiced by being tried by a jury from which Negroes were excluded.

I would have reversed the lower court instead of affirming it.

Judge Barnes agrees with the principles of law herein stated.