Finnegan *vs.* The State of Georgia.

---

PETER FINNEGAN, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

Where a grand jury, drawn at a term to which the superior court was adjourned by an order of the judge issued at chambers, to serve at the next regular term, found a true bill and the defendant was arraigned thereon:
*Held,* that a plea in abatement setting forth the above facts, should have been sustained.

JACKSON, Judge, dissented.

Criminal law. Courts. Indictment. Jury. Before Judge CRAWFORD. Muscogee Superior Court. November Term, 1875.

Reported in the decision.

THORNTON & GRIMES, for plaintiff in error.

W. A. LITTLE, solicitor general, for the state.

WARNER, Chief Justice.

The defendant was indicted for the offense of murder, and on the trial therefor, was found guilty. A motion for a new trial was made on the various grounds of error alleged therein, which was overruled by the court, and the defendant excepted.

It appears from the record and bill of exceptions, that when the defendant was arraigned on the bill of indictment charging him with the offense, he filed a plea in abatement thereto, in which he alleged that in May, 1875, the superior court of Muscogee county was adjourned by an order of the presiding judge thereof in vacation, at chambers, for the convenience of the bar; that the court met at the time appointed in the order of adjournment; that a grand jury was impaneled and the defendant indicted for the murder of Charles Wilding, tried and convicted therefor; that judgment was arrested by the court, and a new trial ordered; that the bill of indictment was *nol. prosed* or set aside; that at the same term of the court so convened as aforesaid, the presiding judge drew another grand jury to serve at the next November term of the court, and at the next November term, the defendant was again indicted for the murder of said Charles Wilding, by the grand jury so drawn as aforesaid. To this plea of the defendant, the counsel for the state demurred. The court sustained the demurrer, and the defendant excepted.

Was the grand jury which found the bill of indictment against the defendant drawn according to law? The 3911th section of the Code declares that the judges of the superior courts, at the close of each term, in open court, shall unlock the jury box, and draw therefrom not less than eighteen nor more than twenty-three names, to serve as grand jurors at the next term of the court. The 3912th section declares that

Finnegan *vs.* The State of Georgia.

whenever, from any cause, the judge shall fail to draw a jury as provided by section 3911, it shall be the duty of the ordinary, together with the commissioners and clerk of the county, to draw grand jurors to serve at the next ensuing term of the court. Thus it will be perceived that the statute recognizes but two modes of drawing grand jurors to serve at the regular terms of the superior court; the one by the judge in open court at the close of each term thereof, the other by the ordinary, together with the commissioners and clerk of the county. When the statute declares that the grand jury shall be drawn by the judge in open court at the close of each term thereof, it must be construed to mean a legal term of the court, that is to say, a term of the court held in accordance with the laws of the land.

The grand jury which found the bill of indictment against the defendant, drawn by the judge at the time and in the manner alleged in the defendant's plea, was not drawn at a legal term of the superior court, according to the ruling of this court in the case of *Hoye vs. The State*, 39 *Georgia Reports*, 718, and we suppose that the verdict was set aside and the first indictment *nol. prosed* as alleged in defendant's plea, for that reason. If the term of the court at which the defendant was first put upon his trial, was not a legal term of the court for the purpose of indicting and trying him for the offense charged, how did it become a legal term of the court to authorize the judge to draw the grand jury which found the bill of indictment to which the defendant pleaded on his arraignment? To state the proposition, is to answer it. The grand jury that found the bill of indictment upon which the defendant was arraigned, was not drawn in accordance with the provisions of the act of 1873, nor does it purport to have been drawn under the provisions of that act on account of any of the special emergencies therein provided for: Code, section 3942. We do not say that if the defendant, with a full knowledge of the facts, had gone to trial without raising any objection to the indictment, that he could have taken advantage of it after verdict, but the defendant in this case did

not wait and take his chance for an acquittal until after verdict; he pleaded to the indictment on arraignment, as required by the 4639th section of the Code, and in our judgment, the court erred in sustaining the demurrer to the defendant's plea in abatement to that indictment.

Whenever the state undertakes to deprive one of its citizens of his life or liberty, it is the duty of the courts to see that it is done in accordance with the laws of the land, and not otherwise. In the administration of criminal law, judicial discretion should not be tolerated. The *law*, as it is prescribed by the supreme power of the state, should be the rule of conduct for the courts as well as for the citizen. Inasmuch as the defendant has not been arraigned and tried upon a legal indictment for the offense of which he is supposed to be guilty, we express no opinion in relation to the other questions raised on the argument here.

Let the judgment of the court below be reversed.

BLECKLEY, Judge, concurred, but furnished no opinion.

JACKSON, Judge, dissenting.

1. The act of drawing the names of grand jurors out of the box where they are kept, is a mere ministerial act. The names so drawn at one term of the court, to be summoned to appear at the next term, do not necessarily constitute the grand jury then organized; they may not all appear, only one may appear, and yet a legal grand jury can be built upon that one from the by-standers, if only the persons qualified to serve as grand jurors be used to make up the deficiency. The essential thing is that the grand jury shall be composed of upright and intelligent persons, selected by the ordinary, the clerk of the superior court, and three commissioners appointed by the judge of the superior court. If eighteen such men, drawn by the judge of the superior court, at a regular term thereof, or at an irregular term thereof, or in vacation, or at a term illegal for other business, be summoned, by virtue of his precept to the sheriff, to appear at the next regular term of the

superior court, and do appear, and are sworn and organized as a grand jury for said regular term, and at that regular term find a bill of indictment true, such indictment so found is sufficient, in law, to put the accused upon trial for murder; and if he be fairly tried by a lawful jury of twelve men selected by himself, and be found guilty, he must abide the sentence of the law, and should not be allowed to escape or procrastinate by any such naked technicality as a plea that the judge of the superior court had adjourned the court one week without sufficient cause, and had then, at this session, one week later than usual, performed the mere ministerial act of drawing the grand jurors for the next regular term.

2. The whole spirit of our legislation accords with the above proposition and conclusion. The act of 1799 (Cobb's Digest, page 547,) declares that *the judge*, if he should not hold the court, "shall nevertheless attend in person for the purpose of drawing jurors, or shall transmit to the justices of the inferior court in writing a request that they, or any two of them, attend at the clerk's office" for that purpose; the act of 1815 (Cobb's Digest, page 552,) declares that whenever there shall be a *failure of the judge of the superior court* to draw jurors, then the justices of the inferior court, or a majority, may act; then comes the act of 1869, (Code, sections 3911, 3912,) which declares that the judge shall draw the jury at the close of the term, and on his failure, then the ordinary and clerk and commissioners shall act; and then, to provide against all emergencies, comes the act of 1873, (Code, section 3942,) which declares, after enumerating other emergencies, that when, "*from any other cause,* such court has convened, or is about to convene, and there have been no juries drawn for the same, it shall and may be lawful for *such judge to draw juries,* so many as may be necessary for such court, and cause them to be summoned accordingly, *in the manner prescribed for drawing juries, at the close of the regular terms of such courts respectively;*" so that the duty is upon *the judge* to draw juries, and he may do so at any time so that they can be summoned as they would be if drawn regu-

larly. If, then, he may do so in vacation, can he not at an irregular or illegal term of the court? The grand jurors who found this bill were regularly summoned and organized and sworn, were regularly qualified in every respect, and the only complaint is that the judge drew them out of the box at an irregular or illegal term. It is not pretended that defendant was hurt by it, but the complaint is purely technical, with .the reason and spirit of our whole legislation against it, and not only the reason and spirit, but the letter of our last act of 1873 in its teeth.

3. This case cannot be made to fit upon the Hoye case as a corner-stone. It touches that case scarcely anywhere. There, *the court tried* Hoye at a term to which it had illegally adjourned. All the powers of the court were called into requisition to try him; the judicial mind, its skill, learning, discretion, all were invoked to try a case of life and death. Here, a child could have done what the judge did—he put his hand in the box, drew out a name, called it, and put it in the other box—a hand, an eye, a voice, were all that were necessary to do the ministerial act. The act of the court in the Hoye case was altogether judicial; here, the act of the judge is altogether ministerial. What the court did in the Hoye case, could be done only in court; what the judge did here, could be done at chambers; what the court did in the Hoye case, could be done only in term; what the judge did in the case at bar, could be done in vacation; what was done in the Hoye case, nobody.but a judge of the superior court could do; what was done in the case at bar, the inferior court might have done formerly, and the ordinary, with the clerk and commissioners, can do now. What was done in the Hoye case required judicial skill, somewhat akin to that scientific skill which General Newton displayed in engineering the blowing up of the rock in New York harbor; what was done in the case at bar, the judge's child could have done as easily as General Newton's little daughter's hand applied the match which fired the train. All the judicial machinery of the court was absolutely necessary to try Hoye; the manual act of

drawing without one particle of discretion or judgment, was all that was required to draw the grand jurors. In the Hoye case, this court held that the session at the term to which the court was adjourned, was legal for some purposes while it was illegal to try Hoye; if legal for any purpose, surely it was legal to enable the judge to do the mere ministerial act of drawing the jurors to be summoned for the next court.

4. The rulings of the court appear to me to be correct in the main and not injurious to the defendant; the charge legal and impartial, the whole trial fair, the verdict supported by the evidence, and as the presiding judge who tried it is satisfied with the finding, I dissent from the judgment of the court in ordering the case to be tried over.