40728. ALLEN v. THE STATE.

DECIDED JULY 7, 1964.

58

*C. B. King, Thomas M. Jackson,* for plaintiff in error.
*Stephen Pace, Jr., Solicitor General,* contra.

HALL, Judge. 1. The facts stated in the motion to quash the indictment and challenge to the array of traverse jurors show systematic exclusion of Negroes from jury service because of race. Norris v. Alabama, 294 U.S. 587 (55 SC 579, 79 LE 1074); Pierre v. Louisiana, 306 U.S. 354 (59 SC 536, 83 LE 757); Hill

v. Texas, 316 U.S. 400 (62 SC 1159, 86 LE 1559); Patton v. Mississippi, 332 U.S. 463 (68 SC 184, 92 LE 76, 1 ALR2d 1286); *Crumb v. State*, 205 Ga. 547 (54 SE2d 639). Since 1879 such systematic exclusion has been recognized to be a denial of equal protection of the laws to a Negro defendant and to be prohibited by the Fourteenth Amendment to the United States Constitution. Strauder v. West Virginia, 100 U.S. 303, 310 (25 LE 664); Neal v. Delaware, 103 U.S. 370 (26 LE 567); Martin v. Texas, 200 U.S. 316 (26 SC 338, 50 LE 497); Carter v. Texas, 177 U.S. 442 (20 SC 687, 44 LE 839); Smith v. Texas, 311 U.S. 128, 129 (61 SC 164, 85 LE 84); Brunson v. North Carolina, 333 U.S. 851 (68 SC 634, 92 LE 1132); Cassell v. Texas, 339 U.S. 282 (70 SC 629, 94 LE 839); Brown v. Allen, 344 U.S. 443, 470 (73 SC 397, 97 LE 469); Eubanks v. Louisiana, 356 U.S. 584 (78 SC 970, 2 LE2d 991); Arnold v. North Carolina, 376 U.S. 773 (84 SC 1032, 12 LE2d 77). In this case we are presented with a question that has not been decided by the United States Supreme Court, whether a defendant's not being a member of a race excluded from jury service "would alone defeat an otherwise well-established case under the [Fourteenth] Amendment." Fay v. New York, 332 U.S. 261, 287 (67 SC 1613, 91 LE 2043); Thiel v. Southern Pacific Co., 328 U.S. 217, 225 (66 SC 984, 90 LE 1181).

The United States Supreme Court has spoken, however, in language that leads us to believe that a defendant need not be a member of the Negro race to complain of the systematic exclusion of Negroes from the jury list. The exclusionary practice condemned by the Fourteenth Amendment does not depend upon the exclusion from juries of a group to which the defendant belongs or identifies himself, but on the resulting failure of the jury to represent a cross section of the community. "Jury competence is an individual rather than a group or class matter. That fact lies at the very heart of the jury system. . . Thus a blanket exclusion of all daily wage earners, however well intentioned . . . must be counted among those tendencies which undermine and weaken the institution of jury trial. . . It follows that we cannot sanction the method [excluding daily wage earners] by which the jury panel was formed in this case.

. . . It becomes unnecessary to determine whether the petitioner was in any way prejudiced by the wrongful exclusion or whether he was one of the excluded class. . . It is likewise immaterial that the jury which actually decided the factual issue in the case was found to contain at least five members of the laboring class. The evil lies in the admitted wholesale exclusion of a large class of wage earners in disregard of the high standards of jury selection. To reassert those standards, to guard against the subtle undermining of the jury system, requires a new trial by a jury drawn from a panel properly and fairly chosen." Thus the Supreme Court held that "the general principles underlying proper jury selection outlaw" a practice designed by a Federal court to relieve the economically least secure from the financial burden which jury service involves. Thiel v. Southern Pacific Co., 328 U.S. 217, 220, 224, supra. While in this and other decisions involving selection of Federal juries the Supreme Court exercised its power over the administration of justice in the Federal courts, the principles discussed in those opinions are applicable to the issue of the citizen's rights in State courts to the protections of the Fourteenth Amendment. ". . . Whatever limitations were inherent in the historical common law concept of the jury as a body of one's peers do not prevail in this country. Our notions of what a proper jury is have developed in harmony with our basic concepts of a democratic society and a representative government." Glasser v. United States, 315 U.S. 60, 85 (62 SC 457, 86 LE 680). "It is part of the established tradition in the use of juries as instruments of public justice that the jury be a body truly representative of the community. For racial discrimination to result in the exclusion from jury service of otherwise qualified groups not only violates our Constitution and the laws enacted under it, but is at war with our basic concepts of a democratic society and a representative government." Smith v. Texas, 311 U.S. 128, 130, supra. "The injury is not limited to the defendant—there is injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts." Ballard v. United States, 329 U.S. 187, 195 (67 SC 261, 91 LE 181) ; Glasser v. United States, 315 U.S. 60, 85, 86, supra; Hill v. Texas, 316

U.S. 400, 406, supra. "Historically, it is not demonstrable that, either now or in the era of post-rebellion reconstruction in the states which produced the decisions, the plight of a Negro before a grand jury where unanimity is not required, would be preferable if it included one or more but less than a predominant number, of the members of his race, instead of being selected entirely from the white race. Cold, practical realism rather denies the advantage. The surer ground of decision in addition to the explicit constitutional and statutory mandates would seem to be the purposeful denial of that degree of detachment and impartiality which the law contemplates in the selection of juries; whereby injury actually results to the state, to the law as an institution, and to the individual both as a member of society and as a defendant immediately under the scrutiny of the jury." United States v. Roemig, 52 FSupp. 857, 862.

It has been held, and is sound reasoning, that when the impaneling of a jury is not in compliance with law, the jury as a body is not competent to act, and its action is invalid. *Georgia R. v. Cole,* 73 Ga. 713, 715; *Tompkins v. State,* 138 Ga. 465, 469 (75 SE 594); *Glass v. State,* 109 Ga. App. 353, 354 (136 SE2d 199); *Ludden v. State,* 109 Ga. App. 745 (137 SE2d 402); Collins v. Walker, 329 F2d 100, 105 (5th Cir. 1964); Hammers v. State, (Okla.), 337 P2d 1097, 1105.

In 1937 the Georgia Supreme Court affirmed a trial court judgment finding against a white defendant's "challenge to the array of jurors because Negroes who were citizens and taxpayers of the county, and qualified to serve on juries therein, had been systematically excluded from jury service solely on account of their race and color, in violation of the Fourteenth Amendment to the Federal Constitution." The court stated: "The defendant was a male white citizen. He does not show how he was harmed or prejudiced by the systematic exclusion of women and Negroes from traverse juries, or how this exclusion violated any right of his." *Griffin v. State,* 183 Ga. 775, 777 (190 SE 2). But see *Finnegan v. State,* 57 Ga. 427; *Tompkins v. State,* 138 Ga. 465, 469, supra. The *Griffin* decision, however, was prior to *Crumb v. State,* 205 Ga. 547, supra, and prior to the cases dis-

cussed above decided by the United States Supreme Court, and cannot be considered a binding precedent in the present case.

We are of the opinion that any system that results in the consistent selection of jurors from a group or portion only of those available for service in that office, rather than from those available without discrimination, does not accord to any defendant the type of jury to which the law entitles him. "The equal protection clause of the Fourteenth Amendment prohibits a state from convicting any person by use of a jury which is not impartially drawn from a cross-section of the community." Fay v. New York, 332 U.S. 261, supra (dissenting opinion); accord Beck v. Washington, 369 U.S. 541, 570 (82 SC 955, 8 LE2d 98). (Black, J., dissenting).

Furthermore, we cannot say as a matter of law that this defendant, who was active in voter registration among Negroes, was not a member of a group systematically excluded in selecting the grand and traverse juries. "Throughout our history differences in race and color have defined easily identifiable groups which have at times required the aid of courts in securing equal treatment under the laws. But community prejudices are not static, and from time to time other differences from the community norm may define other groups which need the same protection. Whether such a group exists within a community is a question of fact. When the existence of a distinct class is demonstrated, and it is further shown that the laws, as written and applied, single out that class for different treatment not based on some reasonable classification, the guarantees of the Constitution have been violated." The petitioner has the burden of establishing the existence of a class. "One method by which this may be demonstrated is by showing the attitude of the community." Hernandez v. Texas, 347 U.S. 475 (76 SC 667, 98 LE 866).

Were it necessary for the defendant to show prejudice, judicial notice might be taken that where prejudice exists against the advocacy of the Negro's full privileges and duties of citizenship, a white person active in promoting participation in government by Negroes would be the object of as strong adverse prejudice

as would a Negro engaged in such activities, and perhaps stronger. *Ingram v. State,* 97 Ga. App. 468, 487 (103 SE2d 666).

The trial court erred in overruling the defendant's motion to quash the indictment and challenge to the array as a matter of law, for the reason that the facts showed a denial to the defendant of equal protection of law contrary to the Fourteenth Amendment of the United States Constitution.

2. Under the Constitution of the United States and of the State of Georgia a criminal defendant is entitled to be tried according to the law of the land. No state shall "deprive any person of life, liberty, or property without due process of law." Constitution of the United States, Amendment XIV (*Code* § 1-815). "No person shall be deprived of life, liberty, or property, except by due process of law." Constitution of the State of Georgia of 1945, Art. I, Sec. I, Par. III (*Code Ann.* § 2-103). The limitations of due process of law on governmental power proceed from historical insights, that the manner in which governmental power is exercised upon the individual, even in an area of governmental concern, requires limitations. The concept of due process of law—the law of the land—came to us from the English common law, Magna Carta, and other important documents of English law. See Hotchkiss, A Codification of the Statute Law of Georgia (1845), pp. 12, 16, 18, 28. Its embodiment in our written Constitutions guarantees our freedom from the arbitrary exercise of power, whether flowing from the legislative or executive branches of the government. Hurtado v. California, 110 U.S. 516, 527 (4 SC 111, 28 LE 232). Fundamentally it assures that every citizen shall have the benefit and protection of the general rules that govern society, through law in its regular course of administration through courts of justice. "This is a government of laws and not of men." Truax v. Corrigan, 257 U.S. 312, 332 (42 SC 124, 66 LE 254). "The history of liberty has largely been the history of observance of procedural safeguards. And the effective administration of criminal justice hardly requires disregard of fair procedures imposed by law." McNabb v. United States, 318 U.S. 332, 347 (63 SC 608, 87 LE 819); *Mitchum v. State,* 11 Ga. 615, 633; Miller, "An Affirmative Thrust to Due Process of Law," 30 Geo. Wash.

L. Rev. 399 (1962). "It is procedure that spells much of the difference between rule by law and rule by whim or caprice." Anti-Fascist Refugee Commission v. McGrath, 341 U.S. 123, 179 (71 SC 624, 95 LE 817).

One of the objectives of the various procedural safeguards traditionally demanded in the name of due process "is the goal of insuring the reliability of the guilt-determining process—reducing to a minimum the possibility that any innocent individual will be punished . . . it is of critical concern that the integrity of the process of ascertaining guilt or innocence never be impaired. . . This consideration, often expressed in terms of 'fairness,' gives meaning to the great bulk of procedures that have become part of the due process of law: that the accused be put on fair notice of the nature of the prohibited acts; that he be given an adequate opportunity to present his side through counsel before a fair and impartial tribunal free from prejudicial influences; that he be entitled to be continuously present at the trial, and to confront and cross-examine his accusers; that he have the right to be free of the damaging and untrustworthy influence of coerced confessions and testimony knowingly perjured." Kadish, Methodology and Criteria in Due Process Adjudication—A Survey and Criticism, 66 Yale L. J. 319, 346.

"Procedural fairness, if not all that originally was meant by due process of law, is at least what it most uncompromisingly requires. . . Insofar as it is technical law, it must be a specialized responsibility within the competence of the judiciary on which they do not bend before political branches of the Government, as they should on matters of policy which comprise substantive law. . . Only the untaught layman or the charlatan lawyer can answer that procedures matter not. Procedural fairness and regularity are of the indispensable essence of liberty. . . Let it not be overlooked that due process of law is not for the sole benefit of an accused. It is the best insurance for the Government itself against those blunders which leave lasting stains on a system of justice. . ." Shaughnessy v. Mezei, 345 U.S. 206, 224 (73 SC 625, 97 LE 956).

The Federal Constitution's Fourteenth Amendment due proc-

ess clause does not require trial by jury. Walker v. Sauvinet, 92 U.S. 90 (23 LE 678); Maxwell v. Dow, 176 U.S. 581, 603 (20 SC 448, 44 LE 597). It does not require a State to use a grand jury to bring criminal charges against persons. Hurtado v. California, 110 U.S. 516, supra. But when a State uses a grand and trial jury the accused is entitled to those procedures which will insure, so far as possible, that the juries selected are fair and impartial. Beck v. Washington, 369 U.S. 541, 579, supra (dissenting opinion). The procedures which will insure, so far as possible, that juries selected are fair and impartial have been determined and are the law of the land in Georgia. *Code Ann.* § 59-112; *Wilson v. State,* 69 Ga. 224, 237, supra; *Crumb v. State,* 205 Ga. 547, supra. They must be applied alike to all persons in the jurisdiction. *Tompkins v. State,* 138 Ga. 465, 468, supra; Maxwell v. Dow, 176 U.S. 581, supra. When these procedures are not used and the jury is not selected according to constitutional requirements, a part of the criminal proceeding is infected with unfairness, and due process is lacking. Beck v. Washington, 369 U.S. 541, 581, supra. "An allegation of discriminatory practices in selecting a grand jury panel challenges an essential element of proper judicial procedure—the requirement of fairness on the part of the judicial arm of government in dealing with persons charged with criminal offenses." Akins v. Texas, 325 U.S. 398, 400 (65 SC 1276, 89 LE 1692).

When a State law provides for indictment and trial by a jury, due process of law, in our opinion, includes indictment and trial by juries selected in accordance with the established law, from a list of citizens representing a cross section of the community. See Thiel v. Southern Pac. Co., 328 U.S. 217, supra; The Constitution of the United States of America, Analysis and Interpretation, Senate Doc. No. 170, 82d Congress 2d Sess. (1953), p. 1145; Note, 26 Texas L. Rev. 533, 535. Thus due process of law is denied in Georgia when a criminal defendant is not accused and tried by a jury selected from such a list, in accordance with the law of the land—the law of this State regulating the procedure for criminal justice. *Finnegan v. State,* 57 Ga. 427, supra; Hurtado v. California, 110 U.S. 516, 533, 535, supra; accord Walker v. Sauvinet, 92 U.S. 90, su-

pra; Chambers v. Florida, 309 U.S. 227, 235 et seq. (60 SC 472, 84 LE 716); Jackson v. Denno, 378 U.S. 368 (84 SC 1774, 12 LE2d 908, dissenting opinion.)

The trial court erred in overruling the defendant's motion to quash the indictment and challenge to the array of the traverse jurors for the reason that the facts alleged in the motion showed a violation of the due process clause of the Fourteenth Amendment to the United States Constitution.

3. The manner of selecting and drawing grand and traverse jurors for the courts of this State is set out in Title 59 of the Code of Georgia. *Code Ann.* § 59-112 exempts certain persons from all jury duty. The exemptions were upheld by the Supreme Court of the United States upon the ground that there is nothing in the Fourteenth Amendment which prevents a State from excluding and exempting from jury duty certain classes (lawyers, ministers of the Gospel, doctors, etc.) on the *bona fide* ground that it is for the good of the community that their regular work should not be interrupted; provided, the "exclusion was not the result of race or class prejudice." Rawlings v. Georgia, 201 U.S. 638, 640 (26 SC 560, 50 LE 899).

Whenever Negroes have been systematically excluded from jury service in Georgia it has been in defiance of, rather than in compliance with, Georgia law. Never in its history has Georgia by law systematically excluded Negro citizens as a class from jury service. On the contrary, it has always been the law that they are not so excluded. As the Supreme Court of Georgia stated in *Wilson v. State,* 69 Ga. 224, 237, supra, "In the law . . . as in the Constitution [provisions respecting selection of jurors], it will be seen that no distinction resting on race or color is made; and . . . it is made a felony [*Code* § 26-4010], punishable by penitentiary imprisonment, for any commissioner to violate the law in this regard." The general law must be followed throughout the State. *Tompkins v. State,* 138 Ga. 465, 468, supra. An accused, irrespective of his race, cannot be indicted before a grand jury or tried before a traverse jury not legally impaneled. *Finnegan v. State,* 57 Ga. 427, supra; *Wilson v. State,* 69 Ga. 224, 236, supra; *Tompkins v. State,* 138 Ga. 465, 469, supra.

When an irregularity in *criminal* proceedings involving the constitutional rights of a defendant is shown, it is per se injurious to the defendant. *Zugar v. State,* 194 Ga. 285, 291 (21 SE2d 647); *Montos v. State,* 212 Ga. 764, 766 (95 SE2d 792); *Bobo v. State,* 103 Ga. App. 685, 686 (120 SE2d 203); Thiel v. Southern Pacific Co., 328 U.S. 217, 220, supra; Fay v. New York, 332 U.S. 261, 300, supra (dissenting opinion); United States v. Roemig, 52 FSupp. 857, 862, supra; People v. Medcoff, 344 Mich. 108 (73 NW2d 537); Zimmerman v. State, 191 Md. 240 (59 A2d 675).

The unlawful selection of juries is, of course, more than an irregularity. Rudd v. State, 231 Ind. 105 (107 NE2d 168). "Grand jurors who have not been lawfully impaneled or sworn have no more authority to find indictments than the same number of citizens outside of the courthouse—they are not a grand jury in law." *Tompkins v. State,* 138 Ga. 465, 467, supra; accord *Glass v. State,* 109 Ga. App. 353, 354, supra; *Ludden v. State,* 109 Ga. App. 745, supra.

"Whenever the State undertakes to deprive one of its citizens of his life or liberty, it is the duty of the courts to see that it is done in accordance with the laws of the land, and not otherwise." *Finnegan v. State,* 57 Ga. 427, 430, supra. If there is anything sacrosanct, it is that there cannot be a legal right to break the law under the law. "No man in this country is so high that he is above the law. No officer of the law may set that law at defiance, with impunity. All of the officers of the Government, from the highest to the lowest, are creatures of the law and are bound to obey it. It is the only supreme power in our system of government." United States v. Lee, 106 U.S. 196, 220 (1 SC 240, 27 LE 171). All of us, the public officer and the civil rights demonstrator, must accept the rule of law and abide by it in all areas of our lives, or no one will abide by it and we cannot be protected in our rights in any area. See Hurtado v. California, 110 U.S. 516, 536, supra. The law is the law—is the law —is the law.

The trial court erred in overruling the defendant's motion to quash the indictment and challenge to the array of traverse jurors as a matter of law. The defendant is entitled to present

68 .

evidence in support of his motion and challenge to show that the manner of selecting the grand and traverse jurors was not in accordance with the law of Georgia.

*Judgment reversed. Nichols, P. J., and Russell, J., concur.*