Henry Cook SALISBURY, Appellant,

v.

T. Ralph GRIMES, Sheriff of Fulton County, Georgia, Appellee.

No. 26179.

United States Court of Appeals
Fifth Circuit.

Jan. 14, 1969.

Hoke Smith, William V. Hall, Jr., Atlanta, Ga., for appellant.

Lewis R. Slaton, Sol. Gen., J. Robert Sparks, J. Walter LeCraw, Tony H. Hight, Asst. Sols. Gen., Atlanta, Ga., for appellee.

Before BELL and COLEMAN, Circuit Judges, and BOYLE, District Judge.

COLEMAN, Circuit Judge:

This appeal is from the denial of federal habeas corpus relief to a prisoner, of the white race, convicted in the Georgia courts of armed robbery. We affirm.

Three separate juries have found Salisbury guilty as charged. The first conviction was reversed by the Georgia Supreme Court for an error in the trial instructions and because the prosecutor, in effect, commented on the failure of the defendant to testify, 221 Ga. 718, 146 S.E.2d 776. The second conviction was reversed for an erroneous restriction of the defendant's proof, 222 Ga. 549, 150 S.E.2d 819. The third conviction was affirmed, 223 Ga. 414, 156 S.E.2d 48. In none of these appeals did the defendant raise any challenge to the validity of the

grand jury which indicted him or to the sentence imposed upon him.

In Georgia, the punishment of convicted felons is fixed by the trial jury within the limits prescribed by law, Ga.Code Ann., § 27–2502. The first jury fixed the penalty at ten years imprisonment, the second at twenty years, and the third at thirteen years. In the imposition of the thirteen year sentence the trial judge expressly ordered that credit be given for time spent in jail pending appeal.

Salisbury then unsuccessfully resorted to habeas corpus in the state courts, Salisbury v. Grimes, 223 Ga. 776, 158 S.E.2d 412.

There, as here, he contended that his conviction and sentence violated the Fourtenth Amendment for two reasons:

First, that the *grand jury* (emphasis added) that returned the indictment against the petitioner was drawn from a grand jury box illegally made up because of the use of a jury list from which Negro citizens had been systematically excluded or disproportionately included, and completing said jury box by the use of tax returns wherein taxpayers were segregated by race. The jury box was in fact disproportionate;

Second, that the thirteen year sentence was void because the imposition of a harsher sentence following a successful appeal, three years more than the ten imposed at the first trial, denies the equal protection of the law.

Upon full hearing, including the receipt of written briefs, the District Court denied relief, as stated, and the issues are now for us to decide. If nothing was done in contravention of the requirements of the Constitution of the United States then we are without the jurisdiction to interfere.

As to the attack on the grand jury, the allegation of systematic exclusion of Negroes and resulting disproportionateness, we must begin with the fact that the appellant is of the white race. This Court, therefore, has already decided the issue adversely to appellant, Woodruff v. Breazeale, 291 F.Supp. 130;

affirmed by this Court, 401 F.2d 997 (1968).

A jury infected by racial bias or prejudice cannot be fair and impartial to one of another race. Therefore, as decided in cases so numerous as to negate necessity of citation, systematic exclusion of Negroes from jury panels in cases affecting the lives or liberty of Negro defendants is *per se* proof of Constitutional infirmity. Correspondingly, there can be no racial prejudice between members of the same race. In such cases there may be prejudice for reasons innumerable but not racial prejudice. This may be the reason that the Supreme Court "has never entertained a defendant's objections to exclusion from the jury except when he was a member of the excluded class", Fay v. New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043 (1947).

Bereft of the racial argument, the appellant has neither alleged nor shown any bias or prejudice in the grand jury which indicted him. He has thus failed to raise a question of Constitutional dimensions, Charles v. Maxwell, 6 Cir., 1965, 348 F.2d 890.

Able and diligent counsel for this appellant points out that the Georgia Court of Appeals held in Allen v. State, 110 Ga. App. 56, 137 S.E.2d 711, that a defendant need not be a member of the Negro race to complain of the systematic exclusion of Negroes from the jury list. This decision was noted in *Woodruff*, supra. The Supreme Court of Georgia later declined, however, to adopt this view, Strauss v. Grimes, 223 Ga. 834, 158 S.E.2d 404 (1967), cert. den. 391 U.S. 903, 88 S.Ct. 1651, 20 L.Ed.2d 417.

Appellant strongly urges that the "broad cross section" requirements heretofore imposed by court decisions and Congressional enactment upon the composition of juries in the federal courts are Constitutionally mandatory for the state courts. We do not think so.

There can be no doubt of the power of Congress to enforce the Fourteenth Amendment by appropriate legislation where such is considered necessary or advisable.

Writing for the Court in *Fay*, Mr. Justice Jackson pointed out:

"While this case does not involve any question as to exclusion of Negroes or any other race, the defendants rely largely upon a series of decisions in which this Court has set aside state court convictions of Negroes because Negroes were purposefully and completely excluded from the jury. However, because of the long history of unhappy relations between the two races, Congress has put these cases in a class by themselves. The Fourteenth Amendment, in addition to due process and equal protection clauses, declares that 'The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.' So empowered, the Congress on March 1, 1875, enacted that 'no citizen possessing all other qualifications which are or may be prescribed by law shall be disqualified for service as grand or petit juror in any court of the United States, or of any State on account of race, color, or previous condition of servitude;' and made it a crime for any officer to exclude any citizen on those grounds. 18 Stat. 336–37, 8 U.S.C. § 44. For us the majestic generalities of the Fourteenth Amendment are thus reduced to a concrete statutory command when cases involve race or color which is wanting in every other case of alleged discrimination." 67 S.Ct. at 1624.

Within the past year Congress has legislated as to the composition of juries in the federal courts, "The Jury Selection and Service Act of 1968", Public Law 90–274, approved March 27, 1968. It has not seen fit to legislate as to state court juries beyond that described in *Fay*.

■ Our Court, too, has dealt with the question of longer sentences imposed after a successful appeal, Rice v. Simpson, 274 F.Supp. 116, affirmed 396 F.2d 499 (1968), cert. granted 393 U.S. 932, 89 S.Ct. 292, 21 L.Ed.2d 268 (November 12, 1968). It was there held that higher penalties may be imposed if it is shown that the court has additional information which is considered in measuring the increase. To this extent we have differed with the rationale of those cases in other jurisdictions permitting no increase whatever on the theory that the right of appeal must not be fettered by so much as *the risk* of a higher penalty. The risk is always present that there will be more information after a second trial, see Odom v. United States [5 Cir., October 14, 1968] 403 F.2d 45. Cf. Williams v. Alabama, 5 Cir., 1968, 403 F.2d 1019 [December 2, 1968].

In the case now before us the trial jury did not know of the prior sentences. A design to punish the defendant for taking an appeal was therefore impossible. In fact, as above related, the second jury had increased Salisbury's penalty by ten years but this one reduced it by seven years. It is self evident that defendants may deliberately seek the chance that a new jury will reduce the sentence, as happened here. Moreover, the trial court ordered the sentence to be further reduced by credit for time spent in jail pending appeal.

■ In our view, it would be wholly incongruous, and without Constitutional foundation, to hold that a state is forever bound by and may not increase a jury imposed sentence but that the defendant may nevertheless shoot for its reduction with a guarantee in advance that the next jury cannot increase the penalty, although acting on the evidence it has heard and entirely free of any knowledge from which it might impose punishment for taking the appeal. In recent years, defendants have been the beneficiaries of many unprecedented concessions, designed to protect their rights. We do not believe, however, that they are Constitutionally entitled to this kind of a "heads I win, tails you lose" rule. The inherent right of state courts to punish state offenders within the limits imposed by state law should not be interfered with by the federal courts except upon sound Constitutional considerations.

The Judgment of the District Court is

Affirmed.