**Willie Edward KING, Petitioner,**

v.

**Thomas D. COOK, Superintendent of the Mississippi State Penitentiary at Parchman, Mississippi, Respondent.**

**No. GC 6828-K.**

United States District Court
N. D. Mississippi,
Greenville Division.

Jan. 22, 1969.

100

Lawrence A. Aschenbrenner, Jackson, Miss., for petitioner.

Joe T. Patterson, Atty. Gen., Jackson, Miss., for respondent.

## OPINION OF THE COURT

KEADY, Chief Judge.

As the petitioner has exhausted his state remedies, and the respondent has filed a return to the Order to Show Cause, we must now determine whether or not to hold an evidentiary hearing, and, if so, what issues will be considered thereon. A summary of the factual background of this case, prior to King's filing a petition for writ of habeas corpus in this court, has been detailed in this Court's opinion in King v. Cook, 287 F. Supp. 269 (N.D.Miss.1968). A brief resume of what has taken place thereafter should suffice to set this matter in proper perspective.

The Opinion and Order entered on July 12, 1968, in this cause granted petitioner four months within which to exhaust his available state court remedies, specifically the error coram nobis procedure provided in Mississippi Code Annotated § 1992.5. On August 30, 1968, we denied petitioner's motion for reconsideration, and on October 30, 1968, he filed an application for leave to file a petition for writ of error coram nobis with the Mississippi Supreme Court. On November 18, 1968, that Court entered an Order denying the application without opinion. On December 18, 1968, this Court ordered the respondent to show cause why petitioner's application for writ of habeas corpus should not be granted, setting January 8, 1969, as the return date. On January 3, 1969, respondent filed his return and answer as well as a motion to dismiss the petition for writ of habeas corpus, alleging in sum that all the issues raised in the petition were fully and fairly adjudicated in the state courts.

 With respect to the determination whether a hearing should be held, the United States Supreme Court has set forth the following governing principle in Townsend v. Sain, 372 U.S. 293, at 312–313, 83 S.Ct. 745, at 757, 9 L.Ed.2d 770 (1963):

"Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts."

In addition, it is clear that a hearing need not be held if the issue is purely a legal one. Barker v. Ohio, 330 F.2d 594 (6 Cir. 1964); Sokol, a Handbook of Federal Habeas Corpus (1965). Although the district judge may find that the state court has reliably found the facts, he must apply the applicable federal law to the state court fact findings independently. Townsend v. Sain, 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); United States ex rel. Hall v. Illinois, 329 F.2d 354 (7 Cir. 1964).

The points which were raised in King's habeas corpus petition, at his trial in state court, and later in the Mississippi Supreme Court are as follows: 1) unconstitutional exclusion of women from jury service solely by reason of their sex; 2) unconstitutionally vague standards for the selection of jurors; 3) systematic exclusion of Negroes from the jury list and venire from which the grand jury was drawn; 4) failure to grant petitioner a mental examination pursuant to Mississippi Code Annotated § 2575.5 (Supp.1966); and 5) failure to permit petitioner to select a psychiatrist for aid in his defense, at the expense of the county. The first two involve purely legal questions, and the third a question mixed with law and fact. The latter two, numbers four and five, involve factual questions. As required by the Court of Appeals for the Fifth Circuit in Shinall v. Breazeale, 404 F.2d 785 (December 19, 1968), we shall set forth in detail our reasons for either granting or denying the writ as to each point raised by petitioner, shall consider in that connection the transcript of the trial court proceedings, the pleadings, opinion of the Mississippi Supreme Court, and other pertinent documents, including briefs of

counsel. See Townsend v. Sain, supra, 372 U.S. at 318–319, 83 S.Ct. 745.

We turn first to those points which require a review of the state court's determination of factual issues. In this area, the United States Supreme Court held in Townsend v. Sain, supra, at 313, 83 S.Ct. at 757, that there are six circumstances in which a petitioner has a right to a hearing:

"(1) the merits of the factual dispute were not resolved in the state hearing;

(2) the state factual determination is not fairly supported by the record as a whole;

(3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing;

(4) there is a substantial allegation of newly discovered evidence;

(5) the material facts were not adequately developed at the state-court hearing; or

(6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing."

### I.

The allegations of failure to grant a mental examination pursuant to Mississippi Code Annotated § 2575.5 [1] (Supp. 1966) and failure to permit petitioner to select a psychiatrist for aid in his defense, at the expense of Quitman County, Mississippi, are considered together.

■■■ The trial court, in response to a motion filed by petitioner, conducted an extensive hearing to determine whether he should be examined by a psychiatrist prior to trial, and the Mis-

sissippi Supreme Court, in reviewing the evidence on appeal, determined that the trial judge was correct in overruling the motion. The Court held that the testimony offered by witnesses for defendant as to his sanity was equivocal at best, while the state offered four witnesses whose testimony tended to contradict that of the defense witnesses. On this proof the lower court announced its ruling:

"The Court has listened very carefully to all of this testimony and had the advantage of seeing and hearing the witnesses, and seeing the demeanor of the witnesses and of the defendant. The Court does not think that there is a reasonable probability that the defendant does not know right from wrong, or that he cannot assist his counsel in conducting a rational defense. Therefore, the motion is overruled." (King v. State, (Miss. 1968) 210 So.2d 887.)

The Mississippi Supreme Court affirmed the action of the lower court because, inter alia, the issue was one of fact decided by the trial judge who had substantial evidence upon which to support his ruling. We agree. As to the request for a psychiatrist to aid in the defense, the Mississippi Court noted that § 2575.5 makes no provision for the appointment of a psychiatrist chosen by a defendant; in fact, the statute specifically grants this power to the trial judge. The Court also stated that "When the invocation of the aid of this statute has been sustained, the movant, regardless of status, has been committed to the State Hospital for the Insane for examination by its staff. Neither the competency of the psychiatrists there nor their integrity has been questioned."

---

1. Miss.Code Ann. § 2575.5 (Supp.1966) provides:

"In any criminal action in the circuit court in which the mental condition of a person indicted for a felony is in question, the court or judge in vacation on motion duly made by the defendant, the district attorney or on the motion of the court or judge, may order such person to submit to a mental examination by a competent psychiatrist selected by the court to determine his ability to make a defense; provided, however, any cost or expense in connection with such mental examination shall be paid by the county in which such criminal action is pending."

## II.

■ Mississippi Code Annotated §§ 1762–03 and 1766 (Supp.1966), attacked on "void-for-vagueness" grounds, both provide that jurors selected by the Boards of Supervisors of the various counties must be "qualified persons of good intelligence, sound judgment, and fair character". It is contended that these sections provide for the selection of jurors on a basis of vague, subjective and nonreviewable standards, thus vesting unlimited discretion in the Boards of Supervisors. This aspect of the jury discrimination question has not been strongly urged upon us here, nor was it vigorously pressed in the Mississippi Supreme Court. In holding this assignment of error wholly without merit the Court merely referred to as controlling its ruling on that question in Reed v. State, 199 So.2d 803, 806 (Miss.1967). In *Reed*, the Mississippi Court held that Code §§ 1762–03 and 1766 must be read together with § 1762, which states that every male citizen, not under 21 years of age, who is a qualified elector, has not been convicted of an infamous crime, or the unlawful sale of intoxicating liquors within a period of five years, and who is not a common gambler or habitual drunkard, is a competent juror.[2] We agree that these three related statutes are in pari materia, that many of their criteria are wholly objective, that the standards set forth in § 1762 modify and define the more general criteria of intelligence, judgment and character, and that "considered as a whole, the statutes providing for selection of jurors are not void for vagueness, but reasonably definite standards." Reed v. State, supra, at 806.

■ The duty of the federal courts to protect the constitutional rights of all "does not mean we must or should impose on states our conception of the proper source of jury lists, *so long as the source reasonably reflects a cross-section of the population suitable in char-* acter and intelligence for that civic duty." Brown v. Allen, 344 U.S. 443, 474, 73 S.Ct. 397, 416, 97 L.Ed. 469, 498 (1953).

## III.

Mississippi Code Annotated § 1762 (1942 Recomp.), prior to amendment on June 14, 1968, restricted the class of persons competent to serve as jurors to those who were, inter alia, "male citizens". In § 1 of the Amended Act, the word "male" is deleted, thus permitting women to serve on juries.

■ We need discuss in detail neither the applicable state substantive law nor the controlling federal constitutional principles, for we find that petitioner, a male, has no standing to complain of the prior systematic exclusion of women from juries in Mississippi. Suffice it to say that the Mississippi Supreme Court in State v. Hall, 187 So.2d 861 (Miss. 1966), appeal dismissed, Hall v. Mississippi, 385 U.S. 98, 87 S.Ct. 331, 17 L.Ed. 2d 196, held specifically that the state may constitutionally confine the class of competent jurors to males, relying most strongly upon Strauder v. State of West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1880), and forswearing any allegiance to the decision of a three-judge court in White v. Crook, 251 F.Supp. 401 (D.C. Ala.1966) declaring unconstitutional a similar Alabama statute (Ala.Code, Tit. 30 § 21 (1958)).

■ Regardless of the unsettled state of the substantive law, the United States Supreme Court in Fay v. New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043 (1947), and the United States Court of Appeals for the Fifth Circuit, Salisbury v. Grimes (January 14, 1969) 406 F.2d 50, have made it clear beyond doubt that Federal Courts will not entertain a defendant's objection to systematic exclusion of a class unless he is a member of that class.

We find that the foregoing contentions of petitioner have been fully and fairly adjudicated in the Mississippi

---

2. On June 14, 1968, Senate Bill No. 1927 amended § 1762 to add to the qualifications of jurors that they be able to read and write.

state courts, both as to the relevant facts and controlling federal constitutional principles. Therefore, these issues may not be further litigated here, and petitioner's request for an evidentiary hearing thereon will be denied.

## IV.

Examination of petitioner's claim of systematic exclusion of Negroes from the jury list and venire from which the grand jury was drawn compels a different result, however. We grant an evidentiary hearing to further develop the facts for the reasons set forth herein.

▆▆▆ The controlling principles of law in this area are clear and undisputed. A conviction in a state court violates the Equal Protection clause of the Fourteenth Amendment if it is based on an indictment of a grand jury or a verdict of a petit jury from which Negroes were excluded because of their race. See, e. g., Strauder v. State of West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1880); Neal v. Delaware, 103 U.S. 370, 26 L.Ed. 567 (1880); Labat v. Bennett, 365 F.2d 698 (5 Cir. 1966). The burden of proof of discrimination is upon the defendant, Tarrance v. Florida, 188 U.S. 519, 23 S.Ct. 402, 47 L.Ed. 572 (1903); Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, and, when Negro representation on venire lists is not extremely disproportionate to the Negro population in the relevant geographic area, the burden is a heavy one. Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759; Labat v. Bennett, 365 F.2d 698, 712. When the defendant shows a great disparity between the percentage of Ne-

groes in the area from which the jurors are selected and the percentage of Negroes shown to have been included on the general venire, a prima facie case of systematic exclusion is made, and the burden shifts to the state to furnish a constitutionally acceptable explanation for the disparity. Scott v. Walker, 358 F.2d 561 (5 Cir. 1966); Billingsley v. Clayton, 359 F.2d 13 (5 Cir. 1966); Davis v. Davis, 361 F.2d 770 (5 Cir. 1966); Labat v. Bennett, supra. Inclusion of a minimal or token number of Negroes on a jury list does not prevent the systematic exclusion rule from operating. Smith v. State of Texas, 311 U.S. 128, 129, 61 S.Ct. 164, 85 L.Ed. 84; United States ex rel. Seals v. Wiman, 304 F.2d 53 (5 Cir. 1962).

▆▆▆ We encounter difficulty, however, in the application of these basic constitutional guidelines to the facts of this particular case, and shall summarize the relevant evidence developed before the trial court on this issue. It was stipulated that of the 4,680 males over the age of 21, and thus eligible for jury service, residing in Quitman County, Mississippi, in 1960, 2,630 or 56% were non-whites, and 2,050 or 44% were white. It was also stipulated that for the years 1956 through 1965 the jury lists were 5% Negro and 95% white. Seventy-six or 21% of the 354 persons on the jury list compiled in April 1966,[3] from which the grand and petit juries here involved were drawn, were known Negroes. The evidence also showed that there were Negroes, more than "token" in number, on the grand and petit juries in September 1966 and March 1967, the latter being the term of court

---

3. The record indicates a racial breakdown by district as follows:

| District No. | Total No. of Names | Known Negroes |
|---|---|---|
| 1 | 96 | 20 |
| 2 | 35 | 11 |
| 3 | 89 | 15 |
| 4 | 40 | 6 |
| 5 | 94 | 24 |
| | 354 | 76 |

at which petitioner was convicted.[4] The percentage of Negroes to whites on the jury list from which these juries were drawn, however, is much smaller than the percentage of adult male Negroes to adult male whites in the county-wide population, and this disparity has remained unexplained by the state. If the percentage of registered Negro voters to registered whites [5]—the pool from which Supervisors in Quitman County draw their lists—was significantly smaller than the percentage of adult Negro males to adult white males, that fact rested more in the knowledge of the state, and the burden was on the state to produce evidence establishing that fact. United States ex rel. Seals v. Wiman, supra; United States ex rel. Goldsby v. Harpole, 263 F.2d 71 (5 Cir. 1959). Cf. Harper v. State, 251 Miss. 699, 171 So.2d 129 (1965). Whether substantial disparity exists between qualified voters of the two races in the making of jury lists is of fundamental consideration, and evidence thereon must be adduced in this case by the state, in order to withstand a presumption of systematic exclusion *because of race*. Moreover, the record in the trial court is silent as to the number of persons registered to vote in each supervisor's district and the proportion thereof of Negroes to whites. This is highly relevant, since, under § 1766 of the Mississippi Code, the supervisors are required to select the names of potential jurors from the several supervisors' districts in proportion to the number of qualified persons in each district. Further, the record is vague as to what extent indiscriminate voter registration of Negroes took place during the critical period. It is imperative to demonstrate by credible evidence that registration was open to, and freely availed of by, all persons irrespective of race, in the absence of a court order adding "resident freeholders" to the lists. Conclusory statements that since 1960 "more Negroes than whites" had emigrated to other states in search of work do not suffice to explain racial disparity, which may be properly shown by reliable and accepted statistics.

Thus, since the record does not show all facts necessary to overcome a prima facie case of systematic exclusion, this court will order an evidentiary hearing to allow both petitioner and the state to further develop all material facts relevant to this issue. At the conclusion of that hearing, the court will make findings of fact and conclusions of law, determining whether petitioner's race was systematically excluded from the jury list compiled by the Board of Supervisors in April 1966. As to the other points raised by petitioner, the writ will be denied without hearing.

An order will be entered accordingly.

4. On call of 62 jurors for grand and petit jury service for the first week in September 1966, there were 17 known Negroes. For the second week of September 1966, 3 of 14 were Negroes. On additional call for the second week, there were 5 known Negroes out of 36. Of the 36 persons called for the third week of September, 12 were known Negroes. For the first week of the March 1967 term, 10 known Negroes were summoned out of a call of 62 persons for grand and petit jury service. For the second and third weeks of that term there were 6 and 8 Negroes, respectively, called out of 36 veniremen for petit jury duty.

5. Miss.Code Ann. § 1762 (Supp.1966) provides that either qualified electors or resident freeholders of the respective counties are competent jurors. The members of the boards of supervisors may not go outside the list of qualified electors, however, unless authorized by an order of the circuit judge of the county. Miss. Code Ann. §§ 1762–01 and 1762–02 (Supp. 1966); see also Ethridge, Recent Trends in Criminal Law, and Their Effects Upon Mississippi Practice, 37 Miss.L.J. 9, 20–22 (Dec. 1965). The record does not indicate that such a court order has been entered for Quitman County.